## WATKINS v. WILHOIT et al.[*]

### No. 18,167; January 26, 1894.

#### 35 Pac. 646.

Assignment for Creditors—Failure to Record.—Under Civil Code, section 3465, which declares an assignment for the benefit of creditors "void" as against nonassenting creditors, unless recorded as required by sections 3463, 3464, no preliminary suit is necessary by a nonassenting creditor to set aside an unrecorded assignment before he can maintain a creditors' bill to apply the assignor's property in the assignee's hands on a judgment against the assignor.

Assignment for Creditors.—The Fact That an Unrecorded Assignment may be valid as between the parties does not render it merely voidable as against nonassenting creditors, since Civil Code, section 3465, expressly declares it "void" as against them.

Assignment for Creditors.—The Right to Bring a Creditors' Bill to set aside an assignment for the benefit of creditors as in fraud of plaintiff's rights accrues when the execution on plaintiff's judgment against the assignor is returned unsatisfied, and not when the assignment was made.[1]

---

[*]For subsequent opinion in bank, see 104 Cal. 395, 38 Pac. 53.

[1] Cited in Williams v. Commercial Nat. Bank, 49 Or. 505, 11 L. R. A., N. S., 857, 90 Pac. 1017, where it is held that the statute begins to run from the return of the execution.

Cited in Ziska v. Ziska, 20 Okl. 644, 95 Pac. 258, 23 L. R. A., N. S., 1, the court saying that inspection of the case cited will show it does not hold that exhaustion of the plaintiff's legal remedy can be shown only by an allegation that the debtor has had execution issued and retained nulla bona.

Cited and approved in Ziska v. Ziska, 20 Okl. 641, 95 Pac. 256, 23 L. R. A., N. S., 1, which was a suit to set aside a conveyance as fraudulent.

Cited in Blackwell v. Hatch, 13 Okl. 176, 73 Pac. 935, along with other cases, after which the court says: "A long list of authorities might be cited which support this doctrine, but the supreme court of the United States has enunciated the rule, and, even though there were a division of the authorities (which can hardly be said, although one or two intermediate courts have held to the contrary view), we feel constrained to follow the rule as laid down by that court. The appellee commenced his action within two years after his execution was returned and it was therefore not barred by the statute of limitations."

**Recording Instrument—What Constitutes.**—Civil Code, section 1170, which provides that an instrument is deemed to be recorded when deposited in the recorder's office for record, must be read in connection with section 1213, which requires the instrument to be "recorded as prescribed by law" before subsequent purchasers are charged with constructive notice of its contents; and hence no notice is imparted until the instrument is actually placed on record in the proper book, and then it relates back to the date of deposit for record.

**Recording Instrument in Wrong Book.**—The Negligence of the recorder in recording a conveyance in the wrong book cannot affect third persons, but the injury must fall on the parties to the conveyance, since they are the "parties aggrieved," within the meaning of the county government act (section 133), making the recorder liable to the parties aggrieved in three times the amount of damages occasioned by his negligence.

APPEAL from Superior Court, San Joaquin County; Ansel Smith, Judge.

Action in the nature of a creditors' bill by C. G. Watkins against R. E. Wilhoit, B. F. Langford and M. E. Bryant. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

John B. Hall for appellant; F. T. Baldwin, P. S. Wilkes and J. C. Campbell for respondents.

VANCLIEF, C.—This action is of the nature of a creditors' bill in equity to subject property in the hands or under the control of the defendants Wilhoit and Langford to the payment of a judgment at law against defendant Bryant in favor of the plaintiff. A demurrer to the complaint having been sustained, and plaintiff having declined to amend his complaint, judgment passed for defendants. The plaintiff has appealed from the judgment upon the judgment-roll containing a bill of exceptions showing that the demurrer was sustained on the grounds "that the complaint does not state facts sufficient to constitute a cause of action, and that the action is barred by the statute of limitations."

The complaint shows that on June 2, 1890, the plaintiff recovered a judgment against Bryant for the sum of $2,342.60 on a promissory note made by the latter to the former on January 17, 1885, and that no part of the judgment has been

paid. That before, and on February 16, 1886, said Bryant was indebted to others besides the plaintiff, and was then, and ever since has been, insolvent, though he was then the owner of considerable real and personal property in the county of San Joaquin, where he resided. That on said sixteenth day of February, 1886, he executed to defendants Wilhoit and Langford and one Charles Bamert a deed purporting to convey to them all his real and personal property, except such as was exempt from execution, in trust for the benefit of all his creditors, without preference to any, except as provided by law, "to sell and dispose of said real estate and personal property, and to collect the said book accounts and choses in action, using a reasonable discretion as to the times and modes of selling and disposing of said estate as it respects making sales for cash or on credit, at public auction or by private contract or sale, with the right to compound for the said book accounts and choses in action, taking a part for the whole where and when the trustees deem and decree it expedient so to do." Then, after applying the proceeds to the payment of his debts according to law, to pay the surplus, if any, to him, Bryant. This instrument, with an inventory of the property thereby assigned attached thereto and made a part thereof, and the written acceptance of the trust by Wilhoit and Bamert, are fully set out in the complaint. It is next alleged that said instrument has never been recorded in the office of county recorder of said county in any book of records therein of grants, deeds or transfers of real estate, or in any book kept in said office for the recordation of conveyances or mortgages of either real or personal property, or otherwise or elsewhere recorded in said office, save and except that the instrument was, on the sixteenth day of February, 1886, transcribed into a book kept in said office, labeled "Book G, Miscellaneous." That within thirty days after the date of said instrument, pursuant to an order of a judge of the superior court, Wilhoit, Langford and Bamert executed a bond, with sureties, for the faithful discharge of the trust, as required by section 3467 of the Civil Code, and thereupon took possession of all the property described in said instrument, claiming title thereto as assignees. "That said plaintiff at no time, either before or at the time of or since the execution of said instrument, assented to the execution thereof, or to any

matter or thing therein contained, and has never assented to
any act of said Wilhoit, Langford and Bamert, or any or
either of them, done or claimed to be done in the execution
of the trust in said instrument mentioned.'' That at different
times between February 16, 1886, and the commencement of
this suit, said Wilhoit, Langford and Bamert have sold and
disposed of all said property, real and personal, and have re-
ceived from the sales of said lands $4,000, from the sale of
said personal property, $4,000, and from rents, issues and
profits of said real property a sum not less than $10,000; and
that the said Wilhoit and Langford ''now have in their hands
or under their control the full sum of eighteen thousand dol-
lars—proceeds of the property of said Bryant, so as aforesaid
coming into their hands, to which they assert no right or claim
other than a right or claim under said pretended assignment
of February, 1886''; said Bamert having died in January,
1891.   That on January 29, 1892, plaintiff caused to be issued
and placed in the hands of the sheriff an execution on his
said judgment against Bryant upon which on March 29, 1892,
the sheriff indorsed his return that he had ''levied upon all
moneys, goods, credits, effects, debts due or owing or any per-
sonal property of any kind belonging to M. E. Bryant, the
judgment debtor named in the annexed writ, and in the cus-
tody or under the control of R. E. Wilhoit and B. F. Lang-
ford, or either of them''; and proceeds to state the acts con-
stituting a garnishment as required by law, to which Wilhoit
and Langford orally answered that they did not owe Bryant
anything, but declined to make any written answer; and
further returned that he had ''made diligent search and in-
quiry, and had not been able to find any property of any
kind in San Joaquin county belonging to M. E. Bryant out
of which he could make the sums due on the annexed execu-
tion,'' and the same is returned unsatisfied.   It is next alleged
that Wilhoit, Langford and Bamert have not, nor has either
of them, accounted for or paid to any creditor of Bryant said
funds in their hands, and have refused to deliver the same,
or any part thereof, to the sheriff for the satisfaction of said
execution, and claim that they rightfully hold the same for the
uses and purposes of said pretended assignment.   It is further
alleged that said pretended assignment is, and ever has been,
null and void as against the plaintiff, and that plaintiff has

a lien on said money in the hands of Wilhoit and Langford for the payment of his said judgment. The prayer of the complaint is that it be adjudged that the instrument of February 16, 1886, is null and void as against the plaintiff; that plaintiff has acquired a valid lien upon the funds in the hands of Wilhoit and Langford for the payment of his judgment against Bryant; that they pay said judgment, with interest and costs, from said funds; and that plaintiff have such other and further relief as the court may deem equitable.

The foregoing is the substance of the complaint so far as pertinent to the issues of law raised by the demurrer. It should be observed that the assignment was made under title 3, part 2, of division 4 of the Civil Code, before the amendment thereof in March, 1889. The grounds of the demurrer are: (1) That the complaint does not state a cause of action; (2) that the action appears to be barred by section 338, and also by section 343, of the Code of Civil Procedure; and (3) that the complaint is uncertain, and also ambiguous in certain specified particulars. The theory of the complaint is that, as between the defendants and the plaintiff, the assignment of Bryant to the other defendants is void, and that plaintiff is entitled to pursue the $18,000 in their hands or under their control for the satisfaction of his judgment, as though that assignment had not been attempted. If, upon the facts alleged, this position can be sustained, I think the complaint states a cause of action not barred by the statute of limitations, with sufficient certainty, and without ambiguity.

1. It is claimed by appellant that the assignment is void for the reason that it was not recorded. Section 3458 of the Civil Code provides that an assignment for the benefit of creditors "must be in writing . . . . and recorded as required by sections 3463 and 3464." Section 3459 provides: "Unless the provisions of the last section (3458) are complied with, an assignment for the benefit of creditors is void against every creditor of the assignor not assenting thereto." Sections 3463 and 3464 provide that the assignment "must be recorded" and the inventory "filed with the recorder," etc., in the county or counties as therein stated. Section 3465 provides: "An assignment for the benefit of creditors is void against creditors of the assignor, and against purchasers and encumbrancers in good faith and for value, unless it is recorded

. . . . pursuant to section 3463 within twenty days after the date of the assignment.'' Section 3400 requires that ''where the assignment embraces real property, it is subject to the provisions of article 4 of the chapter on recording transfers as well as to those of this title.'' Article 4 of the chapter on recording transfers (sections 1213 and 1215) shows that assignments for benefit of creditors embracing real property must be recorded as conveyances of real property. Section 3473 enacts that ''an assignment for the benefit of creditors, which has been executed and recorded so as to transfer the property to the assignee, cannot afterward be canceled or modified by the parties thereto without the consent of every creditor affected thereby.'' In view of these provisions, I think the assignment was void as to plaintiff, who was a creditor at the time of the assignment, and did not assent thereto; and therefore that it interposes no obstacle to the relief sought by this action, which is to have Bryant's property, in the hands of Wilhoit and Langford, applied to the satisfaction of plaintiff's judgment against Bryant. The assignment being void ''against the creditors of the assignee who did not assent thereto, and against purchasers and encumbrancers in good faith and for value'' (section 3465), no preliminary suit by the plaintiff against the parties to it, to set it aside, was necessary. As against the parties to the assignment, at least, nothing more than plaintiff's election to disregard it was necessary.

Yet it is contended by counsel for respondents that the assignment has so far operated upon and affected the plaintiff as to prevent him from pursuing Bryant's property in the hands or under the control of Wilhoit and Langford, otherwise than by suit in equity to set it aside, on the ground that it is merely voidable, and that he is not at liberty to disregard it as being void as against him, although the statute declares it to be so; that the word ''void'' is often used in the sense of ''voidable merely,'' and must have been used in that sense in the sections of the Civil Code above quoted, for the reason that an assignment for the benefit of creditors is valid as between the parties to it, though not recorded. The theory which seems to have led counsel for respondents to this conclusion is that an instrument or contract cannot, at the same time, be valid as between the parties to it and void as against third persons whose rights it purports or was intended to

affect; and that it must have the intended effect upon such third persons, until they avoid it by procuring a decree of a court of equity setting the instrument aside so far as it affects them. Yet upon this theory the instrument would still be valid as between the parties to it, after having been nullified as to third persons, and would have its intended effect upon the parties, and also upon the subject matter not taken to satisfy the decree in favor of third persons; and therefore would at the same time be valid between the parties and void as to third persons whom it was intended to affect. It follows that the theory propounded is not sound, and that a contract may, at the same time, be binding upon one or all of the parties to it, and wholly void as others whom it was intended to bind or affect; and surely the legislature has the power to make it so. While it is true that the word "void" has been inappropriately used by lawyers and judges, it nevertheless has a determinate meaning in law when applied, as an adjective, to contracts, statutes and other acts intended to effect some purpose or purposes; which meaning is that such contracts, statutes or acts are totally ineffectual for the purposes, or for a part of the purposes, intended. If totally ineffectual for any purpose intended, they are simply void. If totally ineffectual as to only a part of such purposes, they are only relatively void. This distinction is not identical with that between void and voidable, since a voidable act or contract takes effect as intended, and continues to be effectual to all intents and purposes until it is set aside or nullified as to all or some part of the persons or things which were before affected by it. For example: The contracts of infants and contracts procured by fraud, if not otherwise against law or the policy of law, are not void, but only voidable, because they take effect when made, and remain effectual until avoided; whereas void acts, though in the form of contracts or statutes, never take any effect as such; and acts which are only relatively void are denied any effect, even temporary, against a part or class of the persons or things that they purport or were intended to bind or affect. As bearing directly and indirectly upon these distinctions, see Wharton on Contracts, sec. 28, and notes; and Pearsoll v. Chapin, 44 Pa. 13. Therefore, when the legislature has declared an act or instrument void, or relatively void, it must be understood to have used the

word "void" in its primary and ordinary sense as above defined, unless it be made apparent by the context, or by some other statute in pari materia, that it was used in a different sense. But, as applied to assignments for the benefit of creditors in the Civil Code, I perceive nothing in the context, and find nothing in either of the codes, indicating that the word was used by the legislature in any other than its ordinary sense.

But conceding, for the sake of argument merely, that the assignment in question is only voidable, and that the object of this action is to set it aside, as contended by respondents' counsel, still the action is not barred by either of the sections of the statute pleaded, unless the cause of action accrued more than three years before the commencement of the action. It is properly conceded that the action is a creditors' bill in equity to enforce the application of Bryant's property in the hands of and claimed by Wilhoit and Langford to the satisfaction of plaintiff's judgment against Bryant. That such an action is allowable in this state, notwithstanding the provisions of the Code of Civil Procedure for proceedings supplementary to execution, there never has been any question since the decision in the case of Swift v. Arents, 4 Cal. 390. And see Swinford v. Rogers, 23 Cal. 234; Reed v. Goldstein, 53 Cal. 296; Harmon v. Page, 62 Cal. 448. But it is essential to the cause of such an action that the plaintiff should have exhausted his remedy at law, otherwise a court of equity has no jurisdiction of the creditor's bill (3 Pomeroy's Equity Jurisprudence, sec. 1415); and the fact that an execution has been returned nulla bona is conclusive that the legal remedy has been exhausted: Baines v. Babcock, 95 Cal. 591, 29 Am. St. Rep. 158, 27 Pac. 674, and 30 Pac. 776; Taylor v. Bowker, 111 U. S. 110, 28 L. Ed. 368, 4 Sup. Ct. Rep. 397. In the last-cited case the court, by Mr. Justice Harlan, said: "We are of opinion that the complainant's cause of action should not be deemed to have accrued until the return of the execution": Page 117, 111 U. S., and page 400, 4 Sup. Ct. Rep. Plaintiff obtained judgment against Bryant June 2, 1890, on which execution was issued January 29, 1892, and returned nulla bona March 29, 1892. This action was commenced May 7, 1892, less than two months after the return of the execution, and less than two years after the rendition of the judgment.

Since the judgment was a necessary condition precedent to the creditor's bill, it follows that the action was not barred by any statute of limitation.

It is further claimed by respondents that the depositing of the assignment with the recorder on the day of its date was a recordation thereof as required by law, though it has never been transcribed in any book of records in which the law requires deeds, grants or transfers of real estate to be recorded, and only in a book in which miscellaneous instruments are recorded in supposed accordance with the twelfth subdivision of section 124 of the county government act, which book, however, is not expressly authorized, and for it no index is required to be kept. In support of this point, section 1170 of the Civil Code is cited, and solely relied upon, which reads as follows: "An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the recorder's office with the proper officer for record." Literally interpreted, without regard to other provisions of the codes in pari materia, and without considering the various objects of recording different instruments, or the differing legal consequences of failing to record, this section would seem to make the depositing of any instrument with the recorder equivalent in effect to the actual recording of it in the appropriate book, though it should never be so recorded; and without such an interpretation it will not answer the purpose for which it is cited by respondent. Yet no case has been cited, and I have been able to find none, in which it has been held that the transcribing of an instrument in a different book from that in which the law requires it to be recorded effects the object of the law, or answers any lawful purpose; but there are many cases to the contrary. In the first place, it is to be observed that section 1170 does not state the effect of recording, nor of a failure to record, any kind of an instrument; such effect generally being declared in each distinct provision of the statute requiring a specific class of instruments to be recorded; but the effect is not uniform in all the classes. For instance, sections 1213 and 1214, Civil Code, declare the effect of recording, and also a failure to record, conveyances of real property, but the effect of a failure to record such conveyances is not commensurate with that of a failure to record an assignment of real property for the

benefit of creditors; since the latter, without being recorded, is void, not only against subsequent purchasers and mortgagees without notice and for value, but also against nonconsenting creditors of the assignor, without regard to actual notice. Section 1213 declares that the effect of recording a conveyance of real property is as follows: "Every conveyance of real property, acknowledged or proved, and certified and recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." By this section no effect is given to the mere filing of the deed for record until it is actually "recorded as prescribed by law," when the actual record is made to relate back to the date of filing with the recorder; and, since section 1213 is the only provision declaring the effect of recording a conveyance of real property, it cannot be said to be inconsistent with section 1170, which says nothing about the effect, but should be read as an addition to and qualification of section 1170; and a fair construction of the two sections, thus read, is that a conveyance is deemed to have been recorded when filed for record only by relation from the time when it was actually recorded. A statute of Missouri provided that every instrument "certified and recorded in the manner prescribed shall, from the time of filing the same with the recorder, impart notice," etc., and it was held under this statute that no notice was imparted until the instrument was actually placed on record, and then it related back to the date of filing for record and that the statute must be so understood: Terrell v. Andrew Co., 44 Mo. 309. Mr. Webb, commenting on this case, says: "The greater weight of reason, if not of authority, seems to be in favor of this view of the law": Webb on Record Titles, secs. 16–18, and cases there cited. In Sawyer v. Adams, 8 Vt. 175, 30 Am. Dec. 459, it was said: "There is but little doubt that 'recording' means the copying of the instrument to be recorded into the public records of the town, in a book kept for that purpose, by or under the superintendence of the officer appointed therefor. This recording may and does take effect from the time the deed or instrument is delivered to the officer, if it is in due time placed upon the records. The delivery of the deed to the town clerk, or his minute on the same that he has received the same for record, is not recording; but the record, if com-

pleted, is considered as taking effect from that time.'' In that case the deed was recorded in an improper book, and the court further said: ''The act of the town clerk was as wholly inoperative as if he had written this deed on a slate or copied it into his family record.'' See, also, 2 Pomeroy's Equity Jurisprudence, secs. 653, 654; Flanagin v. Wetherill, 5 Whart. (Pa.) 280; Reigart's Appeal, 4 Pa. 477; Watson v. Bagaley, 12 Pa. 164, 51 Am. Dec. 595; Wallace v. Wainwright, 87 Pa. 264; Rennie v. Bean, 24 Hun (N. Y.), 123; Dewey v. Littlejohn, 2 Ired. Eq. (37 N. C.) 495.

The precise point under consideration as to the effect of depositing an instrument for record seems not to have been directly decided in this state; but in Lawton v. Gordon, 37 Cal. 202, it was expressly assumed that the withdrawal of a deed from the recorder's office after filing suspends the effect of recording (constructive notice) during the time it is withdrawn, although it is afterward returned and copied into the appropriate book without being refiled. Section 130 of the county government act requires the recorder to indorse upon an instrument the date of its reception, to record the same without delay in the order in which it was received, ''and must note at the foot of the record the exact time of its reception.'' In Donald v. Beals, 57 Cal. 399, the facts were that a mortgage to plaintiff was deposited for record on April 15th, and properly indorsed as received for record on that day, but when he recorded it the recorder noted at the foot of the record that it was received for record on April 18th. Held, that the latter date, though inconsistent with the filing, and proved to be erroneous, must prevail over the true date indorsed on the mortgage. This decision, though indubitably correct, is inconsistent with the literal interpretation of section 1170, Civil Code, contended for by respondents, since it shows that an instrument cannot be deemed to be recorded when deposited with the recorder until it is properly recorded ''as prescribed by law.'' In other words, sections 1170 and 1213, Civil Code, must be read and construed together. So, in Chamberlain v. Bell, 7 Cal. 293, 68 Am. Dec. 260, a prior defective record of a prior deed was held to have imparted no notice to a subsequent purchaser. The defect in the record was the omission of the numbers by which the lots conveyed were described by mistake of the recorder. In the opinion

the court cite as authorities Frost v. Beekman, 1 Johns. Ch. (N. Y.) 288, and Sanger v. Craigue, 10 Vt. 555. In Meherin v. Oaks, 67 Cal. 57, 7 Pac. 47, cited by respondents, the instrument defectively recorded was a personal mortgage, of which it was said that the defendant had actual notice, and the decision cannot properly be supported on any other ground than such actual notice; but, since actual notice to a nonconsenting creditor of an assignment for the benefit of creditors is immaterial, that case is not in point.

It is suggested that the defendants should not suffer for the negligence of the recorder without their fault. The recorder is "liable to the party aggrieved for three times the amount of the damages which may be occasioned thereby" (County Government Act, sec. 133), and the question is, Which is the aggrieved party, whose sole remedy is by action against the recorder? Upon this question the cases are divided, but I think the weight of authority, including California cases, is opposed to the view of respondents (Webb on Record Titles, sec. 18, and notes), though Mr. Devlin, in his work on Deeds (sections 683–696), expresses a contrary opinion. Whether the party who deposits a deed for record is the aggrieved party whose remedy is against the recorder in case it is not properly recorded depends upon a solution of the question above considered and answered. If the mere deposit of his deed with the recorder by the grantee or assignee is to be deemed a recording, and to have the full legal effect of a record, though not afterward actually recorded as required by law, then such grantee or assignee is not aggrieved by the negligence or fraud of the recorder; otherwise he is. As against subsequent purchasers and mortgagees, and as to nonconsenting creditors in cases of assignment for benefit of creditors, it is the duty of the grantee, not only to deposit his deed with the recorder, but to see that it is actually recorded in the proper book, as prescribed by law; and, if not so recorded, it has no effect whatever upon creditors of the assignor nor upon subsequent purchasers or mortgagees in good faith (Civ. Code, sec. 3465); and, therefore, the nonconsenting creditors are not aggrieved by the failure to record. As against them, an unrecorded grant or assignment for the benefit of creditors is void, and raises no equities even though they had actual notice of it: Dewey v. Littlejohn, 2 Ired. Eq.

(37 N. C.) 495. And this is admitted by Mr. Devlin, as I understand him, to be a legitimate deduction from the authorities which hold that constructive notice of an instrument does not date from its deposit for record, unless afterward duly recorded: Secs. 683, 684. I think the judgment should be reversed and the court below directed to overrule the demurrer.

We concur: Haynes, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment is reversed and the lower court is directed to overrule the demurrer.