A. J. BLACKWELL *et al.* v. H. F. HATCH.

(Filed September 10, 1903.)

1. CREDITOR'S BILL—Statute of Limitation Commences to Run, When. The statute of limitation on a cause of action in the nature of a creditor's bill begins to run from the time an execution on the judgment for the debt is returned, nulla bona, and not from the date of the fraudulent transfer of the property sought to be subjected to the payment of the debt.

2. PLEADINGS—Errors Ignored, When. Under section 4018 of the statutes of Oklahoma, 1893, a court in every stage of action must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

3. EVIDENCE. This court will only consider assignments of error as to the admission or exclusion of evidence, when the bill of exceptions or case-made presented contains all of the evidence upon the trial below.

4. PLEADINGS—Judgment Not Disturbed, When. A plea of intervention in the nature of a creditor's bill should contain all of the necessary allegations to make it complete within itself, and an in-

Blackwell *et al.* v. Hatch.

terpleader should not be permitted to refer to and make a part of his plea of intervention, portions of the original petition; but where such reference is made, even though it is objected to in the proper manner in due time by the adverse party, and trial had on such pleading, if the court can clearly determine from the record presented that the judgment is right, that the objecting party was not deceived, but protected every substantial right as fully as he could have done if a proper pleading had been filed, the judgment will not be disturbed.

5. JUDGMENT—Modified, When—Admissions of Appellee. Where an appellee admits in his brief that the judgment appealed from is incorrect, this court will modify the judgment to conform with the admission by appellee against his interest.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*Tetirick & Rose,* for plaintiffs in error.

*Dale & Bierer,* for defendants in error.

Opinion of the court by

Burwell, J.: On September 17th, 1895, A. J. Blackwell, by warranty deed, conveyed certain real estate in Kay county, this territory, to his wife, Rosa Blackwell, and on January 7th, 1898, James A. Ferguson commenced an action against the defendants to cancel that conveyance, claiming some interest in the property. After this action had been commenced, the appellee, H. F. Hatch, by leave of court, filed a plea of intervention, which was in the nature of a creditor's bill, in which he alleged that Rosa Blackwell was the wife of A. J. Blackwell; that at and prior to the time the land in question was conveyed to Rosa Blackwell, her grantor, A. J. Blackwell, was indebted to the intervenor; that suit had been brought in a court having jurisdiction, naming it, judgment obtained and execution returned, *nulla bona,* and that no consideration whatever passed from Rosa Black-

well to her husband for such real estate. And the pleading contained other essential allegations. The trial court suspended proceedings upon the controversy between Hatch and the Blackwells until the final termination of the action between Ferguson and the Blackwells; but in due course of time the original action was tried, which resulted in a judgment for the Blackwells, and against Ferguson; and thereupon this case was again taken up and tried, and judgment rendered in favor of Hatch.

The first error assigned is that the court erred in overruling the demurrer of the defendants to the plea of intervention, because said pleading showed upon its face that the action was barred by the statute of limitations. Section 3890, statutes of 1893, provides:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods: after the cause of action shall have accrued, and not afterwards: Within two years * * * an action for relief on the ground of fraud; the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Now it is insisted that inasmuch as the land was conveyed by A. J. Blackwell to Rosa Blackwell on September 17th, 1895, and the action was not commenced by Hatch until March 14th, 1898, more than two years had run under the statute. It is true that more than two years elapsed from the conveyance of the land to Rosa Blackwell until the commencement of this action; but in a case like the one now under consideration, it does not necessarily follow that the cause of action accrued at the time of the fraudulent conveyance, or even from the discovery of the fraud. It is a common expression that the statute of limitation runs from

the discovery of the fraud, and this is the general rule. But, like all general rules, it has its exceptions. For instance, suppose that A holds a note against B, which will mature in four years, and B fraudulently conveys all of his property to a third person, to defraud A. The statute will not run against A before the maturity of his note, because he would not be entitled to judgment in a court of law before that time; and a creditor's bill cannot be maintained until after judgment is recovered on the debt in a court of law, and an execution returned, "No property found." Counsel for appellant assume that the statute begins to run as soon as the fraudulent act is committed. This is not always true, as before stated. At any rate, the commission or even the discovery of the fraud does not start the statute to running, unless under the conditions then existing a creditor's cause of action accrues. It is true that in many cases the cause of action accrues when the fraud is discovered, or when a party is in law chargeable with notice thereof; but in a case like this one, the statute commences to run when an execution is returned *nulla bona,* and not from the date of the fraudulent conveyance. In other words, equity will not reach out and collect a debt until the party has exhausted his remedy in a court of law. It was the duty of Hatch to commence suit on his claim against A. J. Blackwell when due, and to collect the same in the ordinary way if possible. This he did, and found that the debtor had no property out of which it could be made. He was then entitled to commence this action within two years after the execution was returned, for his cause of action at that moment accrued. In other words, he could not maintain a creditor's bill before the execution was returned, but he could at any time within two years there-

after bring such action.    A cause of action is deemed to accrue at the earliest moment when a creditor can commence the particular action.

In the case of *Taylor, etc., v. Bowker,* (U. S.) 4 Sup. Court Rep., 397, the supreme court of the United States said:

"Suit being brought upon a judgment after a return of *nulla bona* upon the execution writ, the statute of limitation will be held to have commenced to run at the time of the return of the execution, and not the entry of the judgment."

And again, in the same opinion: "The only point seriously insisted upon in argument, or which is necessary to be considered, is that this suit was barred by limitation.    The revised statutes of Maine, in force when it was brought, provided that 'all actions of *assumpsit* or upon the case, founded upon any contract or liability, express or implied' should be commenced 'within six years next after the cause of action accrues, and not afterwards.'    (Rev. St. Me. 1857, c. 81, 92.) The judgment against the company was entered more than six years before the commencement of this suit.    It is insisted that appellee's cause of action accrued upon the entry of the judgment; while it is contended, in behalf of appellee, that even if the foregoing limitation has any application in a suit of equity, brought in the circuit court of the United States by a citizen of another state, his cause of action did not accrue until the return of execution against the company, which occurred within six years prior to this suit.    The counsel for appellee also insist that this suit can be maintained upon the general equitable principles recognized in the cases which hold that the capital stock of a corporation is a trust fund which may be followed by creditors into the hands of those who have notice of the trust; and, consequently, that the right of a circuit court of the United States to give relief,

according to the received principles of equity, cannot be controlled by any limitation prescribed by the state in actions of *assumpsit* or upon the case, founded on contract or liability, express or implied. Without entering upon a discussion of that question, and assuming, for the purposes of this case only, that the circuit court, in analogy to the limitation prescribed by the local statute, could properly have denied the relief asked, where the suit was not brought within six years after the cause of action accrued, we are of the opinion that the decree was right and should be affirmed.

"The proposition that Bowker's cause of action accrued. upon the entry of his judgment against the company rests upon a very technical interpretation of the statute, which, in terms, gives a judgment creditor the right to file his bill in equity against any corporation which has unlawfully made a division of its property, or has property which cannot be attached, or is not, by law, attachable. As this right is given to a judgment creditor, his cause of action, it is claimed, accrues the moment he becomes such; that is, when he obtains judgment. But such, we think, was not the intention of the legislature. The provisions upon this subject in the revised statutes of 1871 are brought forward from the revision of 1857. In respect of these matters, there is no difference, even of phraseology, in the two revisions. In reference to the revision of 1857, it was expressly decided, in *Hughes v. Farrar*, 45 Me. 72, that the principal design was to revise, collate and arrange the public laws, and, in revising, to condense as far as practicable; that a mere change of phraseology should not be deemed a change of law, unless there was an evident intention upon the part of the legislature to make such change. The special remedies given by the revised statutes of 1857, and which were not affected or withdrawn by the act of February 28, 1867, were not then for the first time

provided. Going back to the laws of 1848, we find that, by
an act approved August 10th, 1848, it was made unlawful
for corporations, other than those for literary and benevolent
purposes, banking, and such as, by the common law, were
termed *quasi* corporations, to make any division of their cor-
porate funds or property, so as to reduce their stock below
par value, except to close up the concerns of the corporation
after all its debts are paid. And by the same act it was pro-
vided that in all such cases of unlawful division of corporate
property, 'and in all cases where such corporation has cor-
porate property of any kind which is undivided and which
cannot be come at readily to be attached, or which is not
attachable, any judgment creditor or creditors of such cor-
poration, or his or their attorney, may make complaint there-
of to the supreme judicial court, therein setting forth in
substance his or their judgment, and alleging the same to be
unsatisfied by reason of inability to find corporate property
wherewith to satisfy the same,' etc.

"The provisions of the act of 1848 are preserved, al-
though much condensed in words, in the later revisions of
the statutes. Clearly, the special remedy given to a creditor
by the act of 1848 was given upon the condition that his
judgment· was unsatisfied, 'by reason of inability to find
corporate property wherewith to satisfy the same.' This con-
dition could only be met within the settled doctrines of the
courts of Maine, by an issue of execution upon the judg-
ment. But, because these words were omitted in subsequent
revisions, it is claimed that the legislature intended that the
creditor should have the privilege of filing his bill in the
supreme judicial court, even though it was in his power, by
execution, to find corporate property wherewith to satisfy
his judgment. In this construction of the revisions of 1857
and 1871, we do not concur. Although they do not, in terms
as did the act of 1848, require the creditor to allege in his
bill that his judgment remained unsatisfied by reason of his

inability to find corporate property wherewith to satisfy it, we are not satisfied that their purpose was to change the law, or to modify the grounds upon which relief in equity could be obtained in the supreme judicial court. That court, as we infer from its decisions, would not have given relief under the revisions of 1857 and 1871 unless it appeared that the creditor could not otherwise obtain satisfaction of his judgment; for, as early as in 1848, in *Webster v. Clark,* 22 Me. 313, it was announced, as a general rule, that 'courts of equity are not tribunals for the collection of debts; and yet they afford their aid to enable creditors to obtain payment, when their legal remedies have proven to be inadequate. It is only by the exhibition of such facts as show that these have been exhausted that their jurisdiction attaches. Hence, it is that when an attempt is made by a process in equity to reach equitable interests, choses in action, or the avails of property fraudulently conveyed, the bill should state that judgment has been obtained, and that execution has been issued, and that it has been returned by an officer without satisfaction.' See also *Corey v. Greene,* 51 Me. 114; *Griffin v. Nitcher,* 57 Me. 270; *Howe v. Whitney,* 66 Me. 18. A different construction of the revisions of 1857 and 1871 can be maintained only upon the theory that the legislature intended to abrogate or modify the established rule of equity announced in repeated decisions of the state court. We are not prepared to say that such was the intention."

In the case of *Watkins v. Wilhoit et al.,* (Cal.) 35 Pac. 646, it is said:

"The right to bring a creditor's bill to set aside an assignment for the benefit of creditors as in fraud of plaintiff's rights, accrues when the execution on plaintiff's judgment against the assignor is returned unsatisfied, and not when the assignment was made."

To the same effect is *Gates v. Andrews,* 37 N. Y. 657;

and in *Taylor v. Lander et al.* (Kan.), 60 Pac. 320, it is said in the syllabus:

"An action in the nature of a creditor's bill to set aside a fraudulent conveyance of land, and to subject the same to' the payment of a judgment, must be brought within two years after the plaintiff is in position, by reason of his judgment, to maintain the suit."

A long list of authorities might be cited which support this doctrine; but the supreme court of the United States has enunciated the rule, and even though there were a division of the authorities (which can hardly be said, although one or two intermediate courts have held to the contrary view), we feel constrained to follow the rule as laid down by that court. The appellee commenced his action within two years after his execution was returned, and it was therefore not barred by the statutes of limitations.

The next point urged on the demurrer is that the appellee's interplea refers to and makes a part thereof, the original petition of Ferguson. This, the appellant says, was error. We are inclined to the opinion that a plea of intervention should be as complete in each detail as though it were a petition, and must state the cause of action relied upon just as fully; but, conceding this to be the rule, should this case be reversed on that ground? We think not. The only part of the petition which was made a part of the plea of intervention by reference was the description of the land. Each of the parties understood what land was in controversy, and introduced their evidence in relation thereto. Section 140 of procedure civil (running section 4018) of the statutes of 1893, provides:.

"The court in every stage of action must disregard any

error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

It is clear from a careful examination of the record that A. J. Blackwell owed this debt and that there was no consideration for the conveyance from him to Rosa Blackwell, or for the deed from him and Rosa Blackwell to John C. Sanger for block No. 91 in the city of Blackwell, O. T., executed on December 26, 1893, or from Sanger and his wife back to Rosa Blackwell for the same block. Sanger was Blackwell's son-in-law, and he never pretended to claim the rents and profits of the property embraced in his deed while the title was in his name. The provisions of the statutes above quoted are plain, and the law, as therein stated, should be applied in this case.

The appellant contends that the trial court erred in the admission of certain evidence, but this assignment will not be considered, as all of the evidence is not included in the case made. (*Forbes v. Caldwell* [Kans.], 17 Pac. 478, 29 Kans. 418; *Pierce v. Englekemeier*, 10 Okla. 308; *Ragains v. Geiser Mfg. Co.*, 10 Okla. 544.)

It is also contended that the trial court erred in including in the judgment certain lots not proven to have been conveyed without consideration, and in fraud of the creditors of Blackwell. Under the condition of the record itself we cannot determine this point, although that part of the record presented seems to indicate that this contention is correct; but counsel for appellee admit in their brief that the only property sought to be subjected to the payment of the debt of Hatch is the real estate in the deeds to Sanger and Rosa

Blackwell. Therefore the judgment in this case will be modified so as not to affect any property not included in either the deed from Blackwell and his wife to Sanger, or in the deed from Blackwell to his wife; nor will the plaintiff be permitted to subject any lot or lots to the payment of his claim which are not described in the petition in the case of *Ferguson v. Blackwell,* which by reference was made a part of the plea of intervention in this case. It is so ordered.

The costs of this case are hereby taxed to the appellants.

Hainer, J., who presided in the court below, not sitting; Burford, C. J., dissents; Gillette, J., absent; all the other Justices concurring.