## WATT v. MORROW *et al.*

1. In an action by a judgment creditor against the debtor and his wife to subject to the payment of the judgment land alleged to have been purchased by the husband and placed in the wife's name for the purpose of defrauding the husband's creditors, where both defendants deny that the husband paid any part of the consideration, the presumption that, where property paid for by the husband is conveyed to the wife, it is an advancement made for her benefit, does not obtain.

2. The statute of limitations does not begin to run against the right of a creditor to bring an action to subject to the payment of his claim land alleged to have been purchased by his debtor and conveyed to the latter's wife in fraud of creditors, until the recovery of judgment by such creditor.

3. In an action to subject to the payment of a judgment land alleged to have been purchased by the judgment debtor and conveyed to his wife in fraud of creditors, a court of equity will not regard as of very great importance the mere fact that the deed was taken in the name of the wife, but will look at the circumstances surrounding the transaction, and determine therefrom the real nature of such transaction.

4. In an action to subject to the payment of a judgment land alleged to have been purchased by the judgment debtor and conveyed to the latter's wife in fraud of creditors, evidence held to show that such land in fact belonged to the husband.

5. Under Rev. Civ. Code S. D. § 303, providing: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made," when the facts and circumstances under which a deed is taken clearly show that the consideration was paid by the debtor, and the title taken in the name of another person, equity will apply the property to the payment of the obligations of the debtor.

(Opinion filed April 4, 1905.)

Appeal from circuit court, Lincoln county; Hon. JOSEPH W. JONES, Judge.

Action by George F. Watt against Joseph Morrow and others. Judgment for plaintiff, and defendants appeal. Affirmed.

*C. B. Kennedy,* for appellants.

Where one purchases land with his own money and the legal title is taken in the name of his wife or child, the law raises a presumption that it was intended as an advancement. Finch v. Finch, 15 Wis. 50; Reed v. Huff, 40 N. J. Eq. 234; Maxwell v. Maxwell, 109 Ill. 591; Perry on Trusts, § 146; Thirty-third Northwestern, 36; Doll v. Gifford, 56 Pac. 676.

The evidence shows that the bond for a deed was made in 1885, and the deed in 1890, long prior to six years before the bringing of this action, and the bar of the statute had long since been complete. The plaintiff does not plead any exception to take his case out of the statute, and proves none, and hence no claim is made but this statute has run. The burden is on the plaintiff to plead and prove that he had no knowledge of the

facts, and that he acted all the time with diligence. Wood v. Carpenter, 101 U. S. 139; Norris v. Naggin, 28 Fed. 276; Gillispie v. Cooper, 55 N. W. 302; Lairs v. Colburn, 72 N. W. 838; Allen v. Wiscom, 57 N. W. 1121; Heck v. Slaney, 14 Pac. 88; Broker v. Conklin, 53 Pac. 699; Simmons v. Gray, 61 N. W. 171; Maxwell v. Hess, 7 N. W. 562; Twenty-fifth Atlantic, 72; Thirty-ninth Pac., 894.

In involuntary trusts, the statute commences to run just as soon as the trust is created. Broker v. Conklin, 53 Pac. 699; Sec. 3913 Comp. Laws.

The evidence to establish a trust should be full, complete and conclusive in a case like that at bar, where the relationship between the parties is that of father and child. Annis v. Wilson, 15 Col. 232, 25 Pac. 304; Reed v. Huff, 40 N. J. Eq. 234; Long v. McKay, 84 Me. 200, 24 Atl. 815; Smith v. Smith, supra, 144 Ill. 307, 33 N. E. 35.

*Aikens & Judge* and *Brown & Brown,* for respondent.

If A. purchases land with his own money, but, for proper reasons, the deed is taken in the name of B. with his consent, and A. goes into possession and continues to use the property as his own, this would be an implied trust; the statute of limitations would not deprive A. of his estate for a failure to obtain the legal title within four years. Wood on Limitations, § 219.

The title thus established can only be divested by adverse possession or by the conveyance by the trustor. Boone v. Chiles, 10 Pet. (U. S.) 117; Ahl v. Johnson, 20 How. (U. S.) 511; Longworth v. Taylor, 1 McLean (11 S. C.) 395; Miller v. Bear, 3 Paige (N. Y.) Ch. 466; Waters v. Travis, 9 Johns. (N. Y.) 450.

Where a conveyance is made to the wife, for property purchased by the husband with his own money, the presumption arises that it was intended as an advancement or gift and not a trust. But it is the law that such presumption is a rebuttable one and if the evidence is clear, satisfactory and convincing, such presumption is overcome and the other presumption is established, towit: that a resulting trust was created. It is in fact on both theories a question of intention. Bailey v. Dobbins, 93 N. W. 687; Perry on Trusts (5th Ed.), Secs. 143-147; Dorman v. Dorman, 187 Ill. 79; Crone v. Crone, 180 Ill. 599.

CORSON, P. J. This action was brought by the plaintiff to subject certain property standimg of record in the name of the wife, Eliza Morrow, to the payment of the debt of her husband, Joseph Morrow. The case was tried by a referee, and his findings were confirmed by the court. The findings and judgment being in favor of the plaintiff, the defendants Joseph Morrow and Eliza Morrow have appealed.

The plaintiff, in his complaint, alleged, in substance, that Joseph Morrow and Eliza Morrow were husband and wife; that certain judgments set forth in the complaint were entered against the husband; that the land standing in the name of the wife was in fact the land of the husband, paid for by him out of his own means, and that the deed was taken in the name of the wife for the purpose of hindering and defrauding creditors of the husband and preventing them from collecting their debts; that some time before the recovery of the judgment referred to, Joseph Morrow, acting through the agency of his associate, Eliza Morrow, entered into a contract in writing with the defendant Tompt, wherein it was agreed to sell and

convey to said defendant Tompt the land and premises described in the complaint, wherein said defendant Eliza Morrow agreed upon payment of the purchase price to execute and deliver to said Tompt a warranty deed to the said premises; that said Tompt had notice of the claims of this plaintiff, and by agreement between said defendant Tompt and the defendants Morrow said defendant Tompt reserved from said purchase price the sum of $3,500 with which to liquidate any judgment that might be recovered by plaintiff; and that Eliza Morrow has no lawful right, title, or interest to the same, or any part thereof, but that under and by virtue of the executions referred to the sheriff of the county of Lincoln levied upon the said note as the property of the said defendant Joseph Morrow, and he asks for a judgment that the land so standing in the name of the wife be declared the property of the husband, and subject to be taken in satisfaction of the judgments against him, and that said note be declared the property of Joseph Morrow.

The defendant Eliza Morrow sets up in her answer as a defense to the action that she bought the property described in the complaint more than ten years prior to the bringing of this action from one G. H. Brewer, and pleads the six-years statute of limitation; and as a second defense sets up substantially the same facts and pleads the ten-year statute of limitations. For a third defense she denies that her codefendant Joseph Morrow ever had any interest of any kind in the property described in the complaint; denies that he bought the said land from the said Brewer, or paid the consideration therefor, or had the title put in the name of this defendant for the purpose of defrauding the creditors of her codefendant Joseph Morrow or any other party whatsoever; she denies

that the said Morrow is, or ever was, the owner of the said land or the said note described in the complaint; and denies that Joseph Morrow ever paid any of the considerations therefor. She admits that she made an agreement with the said Tompt that he should not pay the said $2,500 note until it was determined whether the defendant had any right to subject the same to the satisfaction of a judgment against her codefendant Joseph Morrow. Joseph Morrow, in his separate answer, denies that he had any interest in the property described in the complaint, or is the owner of the promissory note executed by the said Tompt to Eliza Morrow; he denies that the property was placed in the name of Eliza Morrow in trust for him, or that he paid the consideration therefor.

The findings of the referee are, in substance, as follows: That the defendant Joseph Morrow at all times alleged in the complaint was the owner of the land and premises described in the complaint; that the defendant Eliza Morrow was his trustee, holding under a title subject to his disposal and control; that said Joseph Morrow at all times until the conveyance to the defendant Tompt had the sole and exc'usive possession of the said property, to have and use for his own personal benefit and profit all the proceeds derived therefrom; that he paid all the consideration for the said property from his own means, and said defendant Eliza Morrow contracted no part thereof, and never had any interest in said property; that on or about the 28th day of March, 1901, defendant Tompt entered into a written contract with the defendant Eliza Morrow for the purchase of said land and premises; that said Eliza Morrow then acted not in her own behalf, but as trustee for defendant Joseph Morrow, and received the $400 then paid as such trus-

tee; that the other allegations contained in the answer of the
defendant Tompt are true; that the note of $2,500 given by
said Tompt to Eliza Morrow was, at the time of the giving
thereof, the sole property of the defendant Joseph Morrow,
in which the defendant Eliza Morrow had not, nor ever had
had, any interest; that it was taken by said Eliza Morrow in
trust for her codefendant Joseph Morrow, and she held it, if
at all, as his trustee, and the same is liable for the payment of
plaintiff's demands as stated in his complaint; that the pleas of
the statutes of limitation set out by the defendants Morrow are
not sustained by the evidence; that plaintiff offered no evidence
upon which he relied to sustain the allegations of fraudulent
intent set forth in the complaint, but relied solely upon the
proof of the trust relations between the defendants Morrow re-
garding the real estate and the note for $2,500 referred to in
these findings; that plaintiff's levy upon the indebtedness rep-
resented by said note of $2,500 given by defendant Tompt to
defendant Eliza Morrow was in fact a levy upon the property
of Joseph Morrow, defendant herein, and the same is liable to
the payment of the judgments described in the complaint here-
in, free from the claims and demands of the defendant Mor-
row; that on the 13th day of August, 1901, plaintiff caused
an attachment to be duly levied upon the land and premises
described in the complaint in the action referred to, and that
at the time defendant Tompt held only a contract for sale, the
sale being consummated and notes and mortgages given on the
14th day of March, 1902, and before which time only $400 of
the agreed price had been paid; that plaintiff, by reason of
said attachments, and because Joseph Morrow was the real
owner of said land, acquired a valid lien thereon to secure the

payment of the said judgment thereafter obtained in said action; that there is due the plaintiff on said judgment the sum of $2,802.14.

On September 19, 1903, from the foregoing facts the referee concludes, in substance, that the defendant Morrow was on the 18th day of November, 1902, the date of the levy thereon, the sole owner of the note for $2,500, together with the accrued interest thereon, given by the defendant Tompt to the defendant Eliza Morrow, and the same was subject to levy and sale under the execution issued in favor of the plaintiff against said defendant Joseph Morrow upon the judgment described in the complaint in this action; that the said defendant Eliza Morrow has not, and never had, any right, title, or interest in the note referred to; that she should be ordered and adjudged to deliver the same to the sheriff of Lincoln county, to be by him collected or sold under and by virtue of plaintiff's claim against her codefendant Joseph Morrow; that plaintiff have and recover from defendant Joseph Morrow the costs and dis bursements of this action in addition to the recovery of the amount of the note of said defendant Tompt; that the balance due upon said plaintiff's judgment after applying the proceeds of said note, $2,500, should be adjudged and decreed to be a lien upon the premises described in the complaint.

It will be observed from the findings of fact that plaintiff offered no evidence to sustain the allegations of fraudulent intent on the part of the defendants in placing the property in the name of Eliza Morrow, and relied solely upon the proof of the trust relation between the defendants Morrow regarding the real estate and the note for $2,500 referred to in the complaint and findings. The allegations, therefore, that the prop-

erty was placed in the name of Eliza Morrow for the purpose of defrauding the creditors of her husband, Joseph Morrow, are eliminated from the case.

It is contended by appellants that where property paid for by the husband is conveyed to the wife, the presumption is that it is an advancement made for the benefit of the wife by the husband (Bem v. Bem, 4 S. D. 138, 55 N. W. 1102; Dorman v. Dorman, 187 Ill. 154, 58 N. E. 235, 79 Am. St. Rep. 210), but that presumption cannot obtain in this case, for the reason that the defendants both deny that the husband paid any part of the consideration for the property, and insist that the property was purchased by Eliza Morrow in her own name for her own benefit, and that she paid the consideration therefor; and such was the theory of the defendants in the trial of the case in the court below. Hence it is not necessary to give any consideration to that presumption in this case.

It is further contended by the appellants that the action is barred by the statute of limitations, but clearly this contention is untenable, for the reason that it is alleged in the complaint and proven on the trial that the plaintiff's judgments to which he seeks to subject the property in payment were recovered in September, 1902, and clearly prior to that time the bar of the statute did not commence to run as against the plaintiff. Weaver v. Haviland, 142 N. Y. 534, 37 N. E. 641; Blackwell v. Hatch, 13 Okl. 169, 79 Pac. 933; Taylor v. Lander, 60 Pac. 320; Corey v. Greene, 51 Me. 114; Howe v. Whitney, 66 Me. 18; Taylor v. Bowker, 111 U. S. 110, 4 Sup. Ct. 397; Gates v. Andrews, 37 N. Y. 657; Watkins v. Wilhoit, 104 Cal. 395, 38 Pac. 53, Id., 35 Pac. 646. In Weaver v. Haviland, 142 N. Y. 534, 37 N. E. 641, the Court of Appeals of New

York held: "The right of a creditor to bring an action to set aside a fraudulent transfer of property made by his debtor does not accrue until the recovery of a judgment against the debtor and the return of an execution thereon unsatisfied. Until that time, therefore, the statute of limitations does not begin to run against such a cause of action. Code Civ. Proc. § 380." In Blackwell v. Hatch, supra, the Supreme Court of Oklahoma, in an exhaustive opinion upon the subject involving the statute of limitations, held, as appears by the first headnote, as follows: "The statute of limitation on a cause of action in the nature of a creditors' bill begins to run from the time an execution of the judgment for the debt is returned nulla bona, and not from the date of the fradulent transfer of the property sought to be subjected to the payment of the debt." In Watkins v. Wilhoit, supra, the Supreme Court of California says: "The right to bring a creditors' bill to set aside an assignment for the benefit of creditors as in fraud of plaintiff's right accrues when the execution on plaintiff's judgment against the assignor is returned unsatisfied. and not when the assignment was made."

The only further question, therefore, presented which we deem it necessary to consider is as to which of the two, the husband or wife, was in fact the owner of the property in controversy in this action. As before stated, the appellants contend that the findings of the referee are not supported by the evidence, in that the evidence shows that the wife purchased the property and paid for the same. On the other hand, the plaintiff contends that the evidence clearly shows that the property was in fact purchased by the husband, and paid for by him, and that the conveyance was taken in the name of the

wife and held by her in trust for him, and that it was never the intention of either party that the property should be in fact the property of the wife, and therefore that the findings are fully supported by the evidence. This contention of the respective parties requires a careful examination of the evidence, for in a court of equity the mere fact that the deed was taken in the name of the wife is not regarded of very great importance, but the court will look at the facts and circumstances surrounding the transaction, regardless of mere matters of form, and determine therefrom the real nature of the transaction. Dorman v. Dorman, 187 Ill. 154, 58 N. E. 235. It is disclosed by the evidence in this case that in 1885 the defendant Joseph Morrow and his wife, Eliza Morrow, resided on a tree claim in Lincoln county, which had been entered by him, and that he was in possession of the premises in controversy as a tenant of one G. H. Brewer, mentioned in the answer who was then the owner of the premises; that at the time he was owner of four horses and some other personal property consisting mainly of farming implements, and his wife was the owner of two cows; that about 85 acres of the land in controversy had been broken by him as such tenant of Brewer, and that in the latter part of May in that year Brewer visited the defendants, and while there negotiations were instituted between Brewer and the wife for the purchase of the quarter section in controversy; that Joseph Morrow, when informed of the negotiations, assented to the same, and thereupon a bond was executed by which Brewer agreed to convey the property to the wife, Eliza Morrow, upon the payment of $2,500 in five annual payments, and in the said bond it was agreed that: "The crop now on said land belonging to said Joseph shall be

sold and the proceeds thereof applied to the payment of the first note, and the said Joseph Morrow and Eliza Morrow agree to break thirty acres of prairie on said land this year, and as a consideration to said Joseph Morrow the said Brewer hereby releases his interest in said crop as landlord and co-tenant in common, and a chattel mortgage upon said crop in favor of said Brewer is hereby created for the purpose of securing or applying the proceeds of the sale as aforesaid.'' The bond was signed by said Brewer and Joseph and Eliza Morrow. At the time the premises in controversy were purchased Joseph Morrow and his wife resided upon the tree claim, and the said Joseph Morrow continued in possession, not only of the tree claim, but of the premises in controversy, and said Joseph Morrow carried on the business of farming upon the two claims in the usual manner by hiring men, superintending their work, harvesting and marketing the crops, buying and selling stock and horses, paying the notes as they became due out of the money received for the sale of crops raised upon the two farms, and using the balance of the money received by him from the two farms in such manner as he deemed proper, keeping no separate account of the amounts received from each. The work on the farm in controversy was done by Joseph and his hired men with his teams and machinery, and the same seems to have been worked with the tree claim farm as one farm. The men, teams, and stock were supplied from the proceeds and grain raised from both farms. During the year 1889 and one or two years subsequently the whole tract of 320 acres was rented as one farm under one contract. Everything that was raised upon the land and all of the stock which was purchased from the proceeds of the farm were used and invested by the husband.

He shipped them to market, sold and delivered them, and received the proceeds or security therefor in his own name. As we have seen, the first payment of $500 was made by Joseph Morrow out of the receipts of the sale of the products for that year of the land leased by him; that the payments of $1,000 subsequently made were from the receipts of sales of the products from both farms, and the balance of the receipts from both farms, amounting to several hundred dollars annually, was used by Joseph Morrow in the purchase of live stock, in supporting his family, and in such other ways as he deemed proper. In 1890 there was still $1,000 due Brewer, and in settlement of that sum Joseph Morrow executed two promissory notes in his own individual name, and these notes were secured by a mortgage executed by said Joseph Morrow and his wife, Eliza Morrow, on the premises in controversy, in which she relinquished her dower right. Whether or not these notes were paid by Joseph Morrow prior to the sale of the property to Tompt does not distinctly appear by the record before us. It clearly appears from the evidence that it was understood between Joseph and his wife, Eliza, that the land was to be worked by Joseph, and that he was to pay for it, and that he could use the surplus as he thought proper, which constituted a general fund for the benefit of the family. As stated by Mrs. Morrow, it was a "family affair." The theory, therefore, of Joseph Morrow and Eliza Morrow that Eliza paid the purchase price of the property is clearly unsustained by the evidence in the case, and we are of the opinion that the referee was clearly right in finding that the said Eliza was not the owner of the property in controversy, and that the same in fact belonged to the husband, Joseph Morrow.

In the case of Dorman v. Dorman, supra, decided by the Supreme Court of Illinois, which is quite analogous to the case at bar, that learned court says: "The evidence in this case clearly established that Martin L. Dorman purchased the land in the year 1873 from A. J. Willey; that he paid the consideration therefor, but at the time the deed was made the title thereto, at his request, was conveyed to Mary A. Dorman, his wife. * * * We have examined the record in this case with much care, and are fully convinced that Martin L. Dorman never intended to give this property to his wife, but that he took the title in her name with the understanding and expectation that she would reconvey the same to him on request. It clearly appears from competent and credible evidence that Martin L. Dorman took possession of the property almost immediately after the purchase; that he made permanent and lasting improvements, paid the taxes, and after a time occupied it with his family as a home; that he at all times controlled and managed it as his own, and that his wife recognized his right so to do. * * * Martin L. Dorman has been in possession of the property from the time of the purchase thereof, and his right to use and possess the same seems never to have been called in question until a short time before the filing of the original bill. His possession was notice to the world of all his rights, and laches cannot be imputed to him." It is true in the case from which we have quoted that the claim was made by the heirs of the husband, and not by creditors; but the law as stated in that case is clearly applicable to the case at bar, and applies with greater force to the creditors of the husband. It is also true in that case that the question of whether or not the conveyance made in the name of the wife, although the

consideration was paid by the husband, would be presumed to be an advancement, was fully discussed and considered by that court, and it held that, while such a presumption prevails, still it is a rebuttable presumption that may be overcome by evidence and that the evidence in that case did clearly overcome the presumption. This question, however, is eliminated from the case at bar, as before stated, for the reason that no claim is made on the part of either defendant that the payments for the property were made by the husband, and the conveyance taken in the name of the wife as an advancement, but such theory is distinctly denied in the answer by both of the Morrows and in their testimony given before the referee. So far as the record in this case discloses, the right of Joseph Morrow to this property was never questioned or denied by his wife, Eliza, until the commencement of this action. The wife seems to have fully recognized the right of her husband, Joseph Morrow, to manage and control this property, to receive the profits and make such disposition of the same as he deemed proper, and the evidence satisfies us, as it did the referee and the learned circuit court, that the title to the property was simply held in the name of the wife in trust for her husband, and that he has been at all times since the purchase of the same its real owner, and is the real owner of the note executed by Tompt in controversy in this action.

Section 303, Rev. Civ. Code, provides as follows: "When a transfer of real property is made to one person and the consideration therefor is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made." This section embodies the common-law rule. Garfield v. Hatmaker, 15 N. Y. 475. In the Civil Code

proposed by the commissioners of the state of New York the section as proposed reads as follows: "Where a transfer of real property is made to one person, and the consideration therefor is paid by or for another, no use or trust results in favor of the person by or for whom such payment is made; but the title vests in the grantee, subject only to the provisions of the next two sections." Section 281. The next two sections read as follows: "Every such transfer as is described in the last section is presumed to be fraudulent as against the creditors, at that time of the person paying the consideration; and where a fraudulent intent is not disproved, a trust results in favor of such creditors, to the extent necessary to satisfy their just demands. Section 281 does not apply: (1) To cases where the grantee took the grant as an absolute transfer in his own name, without the consent or knowledge of the person paying the consideration; nor (2) to cases where the grantee, in violation of a trust, purchased the real property so transferred, with property belonging to another person." These three sections constituted a part of the statutory law of New York at that time. These sections, as proposed by the commissioners, were originally incorporated into the Code of California, but in 1874 section 281 was amended and the two sections following were repealed. The section as amended in California was adopted in 1877 by the codifiers of our Code in this state, and has since been a part of the law of this state. The change made in the law by the Legislature of California had the effect, as will be seen, of making the person receiving the deed a trustee for the person paying the purchase price, and of making the person paying the purchase price the equitable owner of the property. Being the equitable owner, his ownership in

equity can properly be reached by creditors' bill, notwithstand ing the eliminating of the sections in the original draft of the code commissioners. Hence, under the sections as adopted in this state, when the facts and circumstances under which a deed is taken clearly show that the consideration was paid by the debtor and the title taken in the name of another person, equity will apply the property to the payment of the obliga- tions of the debtor substantially as is provided for in section 282 of the proposed Code that was repealed by the Legislature of California. The change resulting from amending the section before reierred to adopted in this state is more apparent than real so far as it affects creditors.

We have not deemed it necessary to review the many cases cited by the appellants in support of their theory of the case, as the principles governing this class of cases are too well settled to require any discussion of the authorities. As before stated, courts of equity seek to discover the real transaction between parties involved in the cases before them, and, in order to ascertain what the real transaction is, they may disregard formal instruments in which it is sought to cover up the real transaction under certain legal forms, and it is rarely that a court of equity is misled by the interposition of such formal documents from ascertaining the real transaction. Courts of equity are too familiar with the various attempts of parties to cover up and conceal their real intention by means of legal forms to be deceived by them, and where, as in the case at bar, the real intention of the parties is so clearly established by the evidence, such courts would be of little use if they could not, regardless of the various legal forms, ascertain the real intention of the parties.

As before stated, we are of the opinion that the findings of the referee are fully sustained by the evidence, and that the judgment of the court and order denying a new trial should be affirmed, and the same are affirmed.