FRANCIS Z. ARPER, Respondent, vs. ALBERT BAZE, Appellant.

APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

Under the laws in force here in 1850, a creditor might levy an attachment upon the personal or real property of his debtor, notwithstanding a previous fraudulent assignment or conveyance; and where real estate is so levied upon, the creditor secured a lien thereon from the time of filing and recording the writ and return as required by the statute.

Such record was notice to all the world of the claim and lien of the attaching creditor, and thereafter any person purchasing the lands of the alleged fraudulent grantee took subject to all the equities which could be enforced against the latter.

Arper v. Bazo.

Points and authorities for Appellant.

I. The court erred in allowing the Plaintiff to offer in evidence the deed from Fish to Willoughby & Powers, and the deed from them to the Plaintiff, and the United States patent to Willoughby & Powers, and the record thereof at the Land Office in Washington City, (see *folios* 2 *to* 6 *of Case,*) because there is no allegation in the complaint under which such evidence could be received. 2 *Duer*, 673; *Van Sant. Pl.*, 253, 298, 299.

II. The court erred in receiving ·in evidence the United States patent of the land to Willougby & Powers, (see *folio* 4 *of Case,*) not only for the foregoing reason, but because it was in direct opposition to the pleadings.

III. The court erred in permitting the witness Powers, called by the Plaintiff, to testify as to statements and declarations of Fish and Northrup, made about the time of the conveyance from Fish to Willoughby & Powers. (See *folios* 35, 36, *of Case.*) Such testimony was incompetent, as being merely the declarations of third persons, or hearsay evidence. The object of the evidence was to rebut the presumption of fraud in the sale from Fish to Willoughby & Powers. If such evidence is competent to rebut the presumption of fraud, then it will be an easy matter to prepare any amount of such testimony, ready for use, in every instance of a fraudulent conveyance. Parties can make all sorts of statements in connection with their acts, but if put upon oath they might *testify* very differently.

IV. It was error in the court to charge the jury (see *folios* 51 *to* 57 *of Case,*) that if the sale from Fish to Willoughy & Powers was fraudulent, they must also find that the.Plaintiff Arper, at the time of his purchase from Willoughby & Powers, if a purchaser for a valuable consideration, *had notice of such fraud*, to entitle the Defendant to a verdict. The charge as given to the jury, as will be observed, imposed upon the Defendant the *burden of showing* that the Plaintiff Arper, at the time of his purchase, had notice of the fraud in the sale from Fish to Willoughby & Powers, which we think is contrary to the well established rules of law applicable in such cases.     5 *Pick.*, 412; 10 *John.*, 231; 13 *East.*,

134, *and Note;* 3 *Ohio,* 156; 28 *Penn.,* 294; *Edwards on Bills,* 686.

V. The court erred in refusing to charge jury as requested, " That the property in question having been attached by Rice, and the attachment papers duly recorded before the conveyance from Willoughby & Powers to the Plaintiff Arper, he, Arper, takes no better title to the property than what Willoughby & Powers had as against Rice and his grantee." The pleadings show, as well as the evidence, that the property was attached at the suit of Rice, and all the attachment papers duly recorded in the Register's office, and judgment recovered, &c., long before the Plaintiff took his conveyance.

VI. The court also erred in refusing to instruct the jury, as requested, " that if Arper, the Plaintiff, purchased from Willoughby & Powers, with notice of the attachment proceedings of Rice against Fish, the Plaintiff is not a *bona fide* purchaser so as to get any other or different right to the property as against Rice or the Defendant, than what Willoughby & Powers had." 18 *Johns.,* 515.

VII. We think also the court erred in refusing to charge the jury, as requested, that " the deed from Willoughby & Powers has never been recorded so as to charge any person with notice of its existence. Therefore, if Rice purchased the property at sheriff's sale, for a valuable consideration, and took a sheriff's deed, and had it recorded without notice of the conveyance from Fish to Willoughby & Powers, then the title of Rice and his grantee, the Defendant, would prevail over that of the said Willoughby & Powers and their grantee, the Plaintiff."

VIII. Also in not charging the jury, as requested, " that even if Rice purchased at the sheriff's sale, with notice of the conveyance from Fish to Willoughby & Powers, or if he paid nothing upon said purchase, still, if the Defendant Baze purchased from Rice for value, and without such notice, then his title is good as against that of Willoughby & Powers." 8 *Wend.,* 621; 17 *Id.,* 2 *Hill,* 650.

IX. The court erred in charging the jury, as requested by coun-

Arper v. Baze.

sel for Plaintiff, " that the record of the patent to Willoughby & Powers, in the General Land Office at Washington, was notice to the Defendant of the title it conveys."

X. The court erred in charging the jury, as requested by counsel for Plaintiff, " that the record of the deed from Willougby and wife and Powers and wife, to Plaintiff, was notice to the Defendant."

There being nothing upon record to show title in Willoughby & Powers, the record of a deed from them being outside of the record chain of title, would not be notice to any one, not claiming through them. 6 *Hall*, 473; 2 *Barb.*, ch. 151; 5 *S. & R.*, 246; 10 *Watts*, 412; 14 *Pick.*, 224; 24 *Maine*, 29; 10 *Missouri*, 34; 10 *Ohio*, 83; 2 *Sandf. C. R.*, 98; 23 *Maine*, 165–246; *Id.*, 170; *Id.*, 246.

SMITH & GILMAN, Counsel for Appellant.

D. COOPER, Counsel for Respondent.


*By the Court*—EMMETT, C. J.—The record in this case shows that on the 7th of October, A. D., 1850, one John R. Fish located a military land warrant upon the land which is the subject of this action, and on the 9th of November following transferred his certificate of location to Amherst Willoughby and Simon Powers, and accompanied said transfer with a warrantee deed of the land so entered. This deed was immediately placed upon record, but owing to the defective acknowledgment (it having been acknowledged before a judge of probate, see *Arper vs. Baze*, 6 *Minn. Rep.*, 220,) the record thereof was unauthorized, and was not therefore notice to any one. This defect, however, did not vitiate the deed itself.

On the 31st of May, 1852, Willoughby and Powers conveyed the land to the Plaintiff by deed, which was recorded June 2, 1852.

On the 12th of November, 1850, Henry M. Rice brought an action against said Fish and attached said land as his property.

On the 19th of June, 1852, Rice, having recovered a judgment against Fish in said action, and issued an execution thereon, purchased said land at the sale by the sheriff, receiving a deed therefor on the 1st day of December, 1852, which was duly recorded the same day. Afterwards by deed dated June 24, and recorded June 27, 1853, Rice conveyed the same property to the Defendant.

In the meantime Willoughby and Powers, as the assignees of the said certificate of location, obtained a patent for the land in their own names, but not until after they had conveyed to the Plaintiff. The patent bears date August 25, 1852, and was duly recorded of that date, in the Land Office at Washington, but it does not appear ever to have been recorded elsewhere.

These facts all appear from the pleadings or stand uncontradicted, and show conclusively that both parties must eventually resort to Fish as the common source of title.

Quite a number of interesting questions were raised on the trial, but the main, if not indeed the only question of fact submitted to the jury was that of fraud in the transfer from Fish to Willoughby and Powers. The Defendant insisted that said conveyance was without adequate consideration; that it was made with intent to defraud creditors; that Willoughby and Powers were cognizant of said fraudulent intent; that the deed was therefore void as to creditors, and as to Rice under whom he claims.

The evidence produced to sustain this charge of fraud was to this effect. That Rice had furnished Fish with the land warrant by which the land was located, and was by the arrangement to be secured by a lien on the land; that Fish had neglected to give this security, and Rice's attorney had threatened to commence proceedings against him unless the matter was at once attended to; that Fish thereupon promised to come down from St. Anthony, where he resided, to St. Paul, and attend to it in a day or two; that instead of so doing he shortly afterward came to St. Paul on a Sunday, in the night time, and without going near Rice gave the deed to Willoughby and Powers, which was executed about three o'clock on Monday morning following, and then fled the

Arper v. Baze.

country; that said Powers himself called upon the judge of pro-
bate, who drew the deed, about nine o'clock P. M. of said Sunday,
and engaged him to be or remain up, so that said deed could be
made as soon as Monday arrived; that about midnight Powers,
Willoughby and Fish came to the office of the said judge of
probate, when it was found that Fish did not have with him the
said certificate of location; that thereupon he went to St. Anthony
after it, returning with it about three o'clock A. M., when the deed
was executed and the certificate transferred; that when he so
returned, Fish remarked to Powers that "they were all up and
at work in Rice's office," being the office of the attorney who had
threatened to commence proceedings against him as before stated;
and that in a conversation about the matter subsequently, Powers
told Lambert, said judge of probate, that they were getting out
an attachment against all of Fish's property, and he wanted to
protect himself.

In answer to this, and to explain the midnight character of the
transaction, said Powers was called as a witness and testified that
they knew nothing of Rice's claim, nor of any fraudulent intention
on the part of Fish towards his creditors; that Fish came to them
in great perturbation of mind, stating that one Northrup, of St.
Anthony, had threatened to kill him, and had actually followed
the stage down in which he (Fish) came to St. Paul, and attempted
several times to shoot him on the road; that he was leaving the
country for fear of his life, and wanted them (they being engaged
in the livery business) to take him out of the country, and also to
buy his land, so that he might pay them what he owed to them,
and be enabled to get away; that accordingly they made the
purchase, paying him the money therefor, all except about $40,
which went to pay their account against him and for sending him
away at that time; and that Fish *did not* say to him, on his
return from St. Anthony with the certificate of location, that
"they were all up and at work in Rice's office," or any thing to
that effect. He also stated that Fish's statements about Nor-
thrup were corroborated by Northrup himself, though at what
time does not certainly appear.

It was further shown that after the parties left the office where the deed was drawn, Fish and Powers, about four o'clock in the morning, called up the register of deeds of the county of Ramsey, went with him to his office, and had the deed filed for record.

This is substantially the evidence introduced in relation to the question of fraud, and had the jury been left entirely free to decide upon its credibility and effect, in all probability the verdict would have been correct. But there were various questions of law raised by the parties, upon which the court was constrained to instruct the jury, which in our opinion materially interfered with the determination of the simple question of a fraudulent intent on the part of Fish, and a knowledge thereof on the part of Willoughby and Powers. We cannot, therefore, give to this verdict the effect which otherwise it would most certainly be entitled to.

The court amongst other matters held, and in effect so instructed the jury, that notwithstanding Fish may have made the conveyance to Willoughby and Powers with intent to defraud his creditors, and that fraudulent intention known to his grantees; yet, if the Plaintiff was not shown to have been cognizant of the fraud at the time of his purchase, he would not be affected by it; and that neither constructive nor actual notice even, of the previous proceedings in attachment, could make any difference as to him; that he was not limited to the same right or title as against Rice or the Defendants, which Willoughby and Powers had.

This, it will be perceived, cast upon the Defendant the whole burthen of proving that the Plaintiff had knowledge of the alleged fraud, and, in the event of failure, rendered it entirely unnecessary to consider whether any fraud had been committed at all. As regards the first of the above propositions, we cannot say that it was improper so to charge the law, although the Appellant has made that a prominent point for reversing the judgment. We refer to it here for the purpose of showing that in the absence of any evidence tending to show a knowledge of the alleged fraud in the Plaintiff at the time of his purchase, the jury probably did not think it necessary to pass upon the question of fraud. It was

in the latter part of the ruling, as above set forth, that the court erred, if at all, and this we propose briefly to consider.

The statute under which these attachment proceedings were commenced, authorized the lands of the debtor to be taken under the writ, and, after judgment, to be sold in satisfaction thereof the same as if they had been levied upon by execution—*Sec. 7, ch. 68, of the Laws of* 1849. The sheriff was also required, when he levied an attachment upon real estate, to make a certified copy of the writ and of his return thereon, and to file and record the same in the office of the register of deeds of the proper county, in the book of mortgages (all of which appears to have been done in this instance); and *from the time of such filing* the statute declared the attachment to be and remain a lien on all the real estate described as attached in the return—*Id., ch.* 69, *sec.* 8.

It would be hard to divine the object of this record if it was not to give notice to all the world that the land had been attached, or the value or object of the lien given thereby, if it did not reach the interest of the debtor in the land as it then existed, and secure it for the benefit of the attaching creditor from that time forward. And if, so far as creditors were concerned, the land was still to be considered as belonging to the attachment debtor; I am unable to perceive why the lien did not attach precisely as if no conveyance had ever been made or attempted; nor can I see how, under such circumstances, the lien thus given and secured could be divested or in any manner affected by any subsequent transfer on the part of the debtor or any one else. To hold otherwise would seem to nullify the statute. If, however, the record of the attachment was not constructive notice to every one of the lien on the interest of the debtor, then there was nothing to prevent him from depriving the attaching creditor of all benefit from the levy, by selling to the first person willing to buy without examining the records, in which case the latter would take the property discharged of the lien. If it had been personal property that had been seized on the attachment the officer would have taken it into his custody, and although Willoughby and Powers might have claimed and insisted that it had been assigned to them for a valuable consid-

eration and in good faith, yet no one could have purchased of them in any way so as to relieve the property of the lien of the attachment; because, while in the possession of the officer it would have been in the custody of the law, and that possession would have been sufficient notice to all purchasers of the lien of the attachment. Now, in the case of real property, this manual custody or possession is seldom if ever possible, but instead thereof the law provided a record which answered the same purpose, so far as giving notice was concerned, and I have never been able to see why it is not equally efficacious.

Again, let us suppose that Fish, under the same circumstances, had assigned to Willoughby and Powers a stock of goods, and Rice, having a judgment against Fish, and claiming that the assignment was fraudulent as against creditors, had levied an execution on the goods as the property of Fish, and taken them out of the possession of Willoughby and Powers—does any one doubt that Rice would hold the goods if he could establish the fraud, and that it would be utterly out of the power of Willoughby and Powers to divest them of the lien of the levy? The most they could do, in that case, would be to dispose of their interest, which was liable to be divested entirely by proof of fraud in the transfer from Fish. It is an every day occurrence for a creditor who doubts the good faith of an assignment by his debtor, to levy upon and oftentimes to sell the property assigned regardless of the assignment, depending upon his ability to establish the fraud. And when he succeeds in making the fraud apparent, the property is treated as if no transfer or assignment had ever been made or attempted. In this respect I know of no difference, whether the property involved be real or personal. If the sale be fraudulent, the property is still considered as belonging to the debtor, and the taking is justified; and it can make no difference whether the property is levied upon under an execution or an attachment, as it is equally beyond the reach of the fraudulent assignee. If it were not so, I could see no manner of advantage in attaching the property of a fraudulent debtor, where there has been an assignment, however apparent the fraud and the assignee's knowledge thereof.

Arper v. Baze.

We regard the levy of the writ of attachment in this case as having the effect of securing to Rice a lien upon the interest of Fish (the extent of which would depend entirely upon the question of fraud), and the recording thereof, as provided by the statute, as preserving that interest *in statu quo* until the rights of the parties then interested could be determined; so that no person having notice thereof, either actual or constructive, could obtain of Willoughby and Powers any better title to the land than that by which they held it.

We hold, therefore, that the court erred in refusing so to charge the jury, as requested by the Defendant, believing that such refusal, in connection with the instruction which the court did give in reference to the necessity of bringing knowledge of any fraud home to the Plaintiff, (as to which there was not a particle of evidence,) had the effect of withdrawing the question of fraud altogether from the consideration of the jury, and that they rendered their verdict without deciding upon that question.

The Plaintiff takes the ground, however, that the government patent for the lands to Willoughby and Powers, and their deed to him, give to him a perfect title of record, and therefore it is immaterial about the title to Fish, or whether the deed from him to Willoughby and Powers is ever recorded, and that it is sufficient for his purpose that he can trace his title direct to the patentees.

We do not think under the admissions of the pleadings and the facts proved, that the Plaintiff can thus ignore the real origin of his title, or gain any exclusive advantage from the patent. He was not in the least misled, or influenced by it in making his purchase, because it had not been issued at that time. He knew that his grantors claimed only through Fish, and that if the patent was to be obtained in their names, it must be solely because they were the assignees of Fish. The facts and pleadings show and admit that the patent was issued to them as such assignees, and, if I am not mistaken, the patent itself will be found on examination to recite that fact. The Plaintiff relied, in his purchase, exclusively on the validity of the assignment from Fish to Wil-

vol. ix.—16

Arpor v. Baze.

loughby and Powers for the perfection of his title; and we must, in this action, determine the rights of the parties precisely as we would had no patent yet been issued.

The Plaintiff further contends that all the proceedings in attachment were void because of alleged non-observances of the statute; but we do not think he can raise this question in this collateral manner. We are far from satisfied, however, that there was any material omission.

Another point made by the Plaintiff is, that the instructions which the Defendant asked the court to give the jury were irrelevant and immaterial, because the only question involved was one of fraud, and of that there was no evidence.

We agree with the Plaintiff that, if there was no evidence from which a jury might find fraud, then, although the court may have erred in his rulings in other respects, the verdict should not be disturbed; but we cannot say that, if the jury had passed directly upon the question of fraud, and had found against the Plaintiff, we would have felt authorized to set aside the verdict as having no evidence to sustain it, because they might have disbelieved entirely the evidence offered by the Plaintiff; and there was some evidence on the other side which, believed and unexplained, might justify a jury in finding that Fish had a fraudulent intent in making the conveyance to Willoughby and Powers, and that that intent was known to them when they took the conveyance.

A new trial must be granted.