Bissell, P. J.
Herein a bill was filed by Mrs. Fox and her children on behalf of themselves and other creditors who might come in against Mrs. Lipe and sundry other persons as administrator and heirs at law of Clark Lipe, to enforce the collection of a judgment which had been obtained in Illinois against Lipe, and charge it on some real estate in Denver which had been bought by Mrs. Lipe, as alleged, with money furnished her or given to her by her husband about the time of the purchase in 1883. The theory of the bill was that a constructive trust arose because the consideration was furnished by the husband, and the title taken in the name of the wife. It was averred she purchased it with these funds to prevent the *260 enforcement of the claims of existing creditors. Fox was alleged to be a creditor when Lipe gave his wife the money and when she bought the property and took the title. In the view we take of the case made by the pleadings and the proof, it is wholly unnecessary to recite in detail either the substance of the bill or the evidence which the plaintiffs offered to support it. Enough only need be stated to make the controversy plain, and to emphasize the propositions on which the decision is made to rest. According to the bill, though otherwise than the proof of the judgment, there was no evidence about it; Fox and Lipe had been in partnership in the seventies and this claim is alleged to have grown out of the partnership relation. When the partnership terminated, when the debt accrued, or when suit was begun for an accounting, is not competently established. There is no proof about it except the statement of a lawyer who appears to have had something to do with the litigation at its outset and perhaps to have been connected with it from its inception to its end. This is not competent evidence of the time when the suit was begun because that is a matter of record. Sherman v. Smith et al., 20 Ill. 350. Even if it be assumed that the litigation was. begun in the eighties, it seems to have been interminably dragged along and for some reason which does not appear judgment was not entered until 1890, when a decree was had for something between $4,000 and $5,000. An execution was issued, and in April, 1891, returned unsatisfied. Clark Lipe was then living in Denver, and did not die until the following fall. It appears the plaintiff or his representatives in the Fox suit delayed the trial, and the procurement of judgment for more than ten years from the time suit was begun and took no steps to enforce this judgment as against the property held by Mrs. Lipe until after Lipe’s decease. After Lipe died the judgment was filed as a claim against the estate, and there was an attempt to make the allowance which partakes of the nature of a judgment for some purposes, a lien on the property, by filing a record of that allowance in the. county clerk’s office. Whether this created a *261 lien within the scope of the decisions which require that a judgment shall be made a lien before a creditor’s bill may be filed, we shall not attempt to decide because the case will be made to turn on some other points.
The bill nowhere alleged that Lipe was insolvent when he gave the money to his wife, nor that the gift rendered him insolvent and unable to pay, nor was there any adequate allegation respecting the discovery of the alleged fraud. The only thing on the subject is a general statement “ that three years had not elapsed since the discovery of the fraud and the said conveyances to Elizabeth Lipe.” There is an indefinite allegation that the plaintiffs were not in position to inquire about the facts or obtain relief and they were not advised until the inventory was filed that the property would not be included in the estate. The plaintiffs produced the testimony which Lipe gave on the hearing in the main suit in Chicago, either in the form of a deposition or as testimony taken on the hearing. Therefrom it appears that at the time he gave his wife the money in 1883 or 1884 he was a man of large means and had over $100,000 left in cash besides a large amount of unincumbered personal property. Whether the claim which he had against the Rio Grande Company which amounted to $80,000 was included in what he had left is not quite apparent, nor are we at all certain the amount of his fortune subsequent to the gift did not exceed $200,000 over and above any possible claims or debts. According to the evidence by which the plaintiffs are concluded since they offered it, he owed no debts unless it be conceded he owed this claim which was ultimately established by the decree for the accounting. It therefore very plainly appears when Lipe made the gift he was a man of fortune and put but a portion of his funds in the hands of Mrs. Lipe for her benefit and the benefit of the children.
There are several questions suggested by the defendants and very fully argued in the briefs of both counsel, which to our minds dispose of the contention that the judgment is erroneous. In the first place it is well settled in this state *262 as well as in most others that a bill which attempts to charge a judgment on realty because of the constructive trust which arises where the husband furnishes the money and the wife acquires title, there must be an allegation sustained by competent proof that the alleged debtor was insolvent at the time he made the transfer or in such financial condition that the transfer affected his solvency or tended to that ultimate end. It is settled by the decisions of our supreme court that a bill is demurrable if the insolvency be not alleged and that it must be distinctly proven if averred. A ease might not be reversed because there was no such averment if the proof competently sustained the proposition. Respecting this we offer no opinion. This bill lacks direct allegations to the point and the case is wanting in any proof to establish what is regarded as a matter of substance. Thomas et al. v. Mackey, 3 Colo. 390.
It is equally clear there was no adequate averment about .the discovery of the alleged fraud. Bills for relief on the ground of fraud must be filed within three years from the date of discovery. Parties who rely on such fraud and upon the failure to discover it in order to remove what would otherwise be an absolute bar under our statute, General Statutes, section 2174, must allege not only the time when the fraud was discovered, but the facts constituting the fraud and the circumstances under which it was ascertained. The cases are very precise and directly hold there must be an allegation of ignorance and also of the facts and circumstances showing when and how it was discovered. If this be not true the bill is demurrable. because the bar of the statute appears on its face. Since there is a necessity for a full and specific averment, the averment must be supported by sufficient and competent proof. It is inexpedient to elaborately discuss the question, construe the statute, or recite the reasons on which the doctrine rests. The question has been discussed in many cases and the rule is entirely settled and it would be folly to reiterate what has been antecedently so fully stated. Pipe v. Smith, 5 Colo. 146; Arnett v. Coffey, 1 Colo. App. 34; Rose et al. v. Dunklee, 12 Colo. App. 403.
*263 There are many other decisions wherein these questions have either been referred to or determined, but these are sufficient to illustrate the rule by which these actions are governed. So far as concerns this record we are unable to discover adequate allegations of insolvency or sufficient statements of the time and circumstances under which the fraud was discovered, or any proof which is sufficient to sustain the action. We do not regard the argument of counsel by which he seeks to overcome this proposition as at all forceful or satisfactory. There is an attempt to show the time when the claim was filed and allowed in the probate court and the allowance filed in the clerk’s office whereon an argument is based that this was within three years, and since no suit could be begun until allowance, therefore, the statute is inoperative. We do not regard this as a sufficient answer. By the very terms' of the bill and the plaintiff’s proof judgment was recovered in 1890 and execution returned in April, 1891, prior to Lipe’s death. The plaintiffs could then and thereupon, and immediately, have begun suit to charge the judgment as a lien on the property. There is no adequate explanation of the laches with which the plaintiffs are chargeable in the recovery of the judgment as well as its enforcement. It can hardly be equitable that the plaintiffs may commence a suit in 1880 and let it linger along for upwards of ten years without successful prosecution and then attack a title held by the wife, even if she did get it with money furnished by the husband, unless some explanation is made for this inexcusable delay. Parties ought to be concluded by such laches, and should not, even though they subsequently obtain judgment, be permitted to attack transactions which on their face were legitimate when they were entered into. They should be diligent in the enforcement of their rights if they would use such judgments to attack a title on the theory of a constructive trust. Whether there is any explanation for the failure to bring this suit within Lipe’s lifetime, we are not advised nor do we deem it expedient to attempt to discover one. It is enough to say there is nothing *264 on the face of the bill nor in the proof which would remove the bar of the statute.
Whether an argument could be built up which would shake the position we have assumed is unimportant as there is another fundamental proposition on which the case must turn and which concludes the plaintiffs.
Voluntary conveyances by the husband to the wife or the acquisition of title to real property by the wife where the husband furnishes the money, being at the time indebted and insolvent, may be attacked and the creditor having obtained a judgment and made it a lien on the property, may file a bill similar to the present and thereon, if his proof be otherwise adequate, obtain relief. The cases to which we have referred concede this, even where on other propositions the bills have been held insufficient. Yet all of them agree that the husband may convey to his wife, or may furnish her money with which she obtains title, and the -property thus conveyed, or the title thus acquired, is not subject to the claims of ereditoi’s, even though then existing, providing the husband is then substantially free from debt or in such circumstances that he has abundant property within his own control to meet promptly all just demands. This right has been emphatically established by two decisions of the supreme court. The right of the husband to yield obedience to the dictates of humanity has been fully and completely recognized, and we regard the decisions of that court on this question as wholly conclusive of the present controversy. Thomas et al. v. Mackey, supra; Gwynn v. Butler, 17 Colo. 114.
The plaintiffs’ proof shows that when Lipe furnished his wife the $30,000 with which she bought this property and gave her other funds with which she bought Chicago property, he then had left within his own control, subject to his own disposition and the demands of creditors, what ought to be regarded as a fortune, anywhere from $100,000 to $250,000. The evidence which Lipe gave was nowhere contradicted. Lipe remained solvent for years, and though ulti *265 mately he lost his property and died insolvent and the family had nothing, except that which had been given to them when he was prosperous, he was within the decisions wholly and entirely solvent. He had a perfect right to give this property or- this money to his wife and make provision for the family should reverses come as they did. We do not regard the plaintiffs’ claim as one which is entitled to much consideration. Had the case been pushed to a successful conclusion within a reasonable period judgment would have been obtained many years before, and when Lipe was solvent. The debt could then have been collected. We think the delay in the prosecution deprives the plaintiffs’ case of all equitable features and permits us to decide it on plain legal propositions.
There are sundry other points which have been urged, but since we regard this as entirely determinative of the rights of the parties, and the judgment of the court below accords with our conclusion, it must necessarily be affirmed, which is accordingly done.

Affirmed.