## ZISKA v. ZISKA *et al.*

No. 1960, Okla. T.   Opinion Filed April 13, 1908.

(95 Pac. 254.)

1. **FRAUDULENT CONVEYANCES—Statute of Limitations—Date of Discovery—Date of Judgment.** In the absence of laches, in obtaining judgment, a suit to set aside a conveyance as fraudulent begun within two years after recovery of such judgment is not barred by virtue of the provisions of paragraph 4216, Wilson's Rev. & Ann. St. Okla. 1903, which provides that actions for relief on the ground of fraud, can only be brought within two years after the discovery, and this notwithstanding the fact that the conveyance in question was made more than two years prior to the institution of such suit. Plaintiff's cause of action does not accrue until recovery of a judgment.

2. **CREDITORS' SUIT—Sufficiency of Allegations—Attachment of Real Estate—Effect of Lien.** Where an attachment is levied upon real estate as. the property of a nonresident defendant. although title to the same stands in the name of another, the attaching creditor acquires a lien upon any interest debtor may have in such land, which he may enforce after judgment in a suit in the nature of a creditors' bill, and in such a case the petition need not aver execution issued and returned nulla bona; it being sufficient to aver in appropriate language the lack of any other available assets.

3. **TRIAL—Demurrer to Evidence.** A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence. On a demurrer to the evidence the court cannot weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrer.

(Syllabus by the Court.)

*Error from District Court, Canadian County; before C. F. Irwin, Judge.*

Action by Katherine Ziska against F. R. Ziska and F. M. Ziska. Judgment for defendants, and plaintiff brings error.. Reversed.

November 4, 1903, Katherine Ziska, plaintiff below, and plaintiff in error here, secured a judgment for $1,700 in the dis-

trict court of Lancaster county; Neb., against Frank R. Ziska, her husband, in a suit for divorce and alimony. On September 7, 1904, she instituted a suit on said judgment in the district court of Canadian county, Okla., suing out an attachment on a quarter section of land described as the N. W. 1/4 of section 17, township 12, range 6 W. of I.M., and on the trial of the cause on November 21, 1904, secured judgment against Frank R. Ziska in the sum of $1,834, in which the attachment was sustained and the land ordered sold as required by law.

On January 6, 1905, she filed this suit in the district court of Canadian county against Frank R. Ziska and F. M. Ziska. The amended petition alleges that in April, 1880, plaintiff and defendant Frank R. Ziska were married and lived and cohabited together until about the 1st day of November 1901, at which time defendant abandoned her; that on the 27th day of July, 1903, she instituted an action for divorce and alimony, in which case on the 4th day of November, 1903, judgment was rendered for an absolute divorce and for $1,700, alimony; that the said judgment has become final; that on the 7th day of September, 1904, plaintiff instituted her action in the district court of Canadian county against Frank R. Ziska on the judgment above mentioned, and caused an attachment to be issued and levied on the land, and that on the 21st day of November, 1904, by the consideration of the said court, she secured a judgment against Frank R. Ziska in the sum of $1,834 and costs of suit, and an order that said attachment be sustained and the land sold as required by law to satisfy the said judgment; that on the 12th day of August, 1893, while plaintiff and defendant Frank R. Ziska were living together as husband and wife, they purchased the said land, which was paid out of the separate estate of this plaintiff, and the legal title to said lands taken in the name of the defendant Frank R. Ziska; that on November 30, 1901, and after the abandonment of the plaintiff by defendant, a deed was made by the said Frank R. Ziska to his brother, which purported to convey to the

said brother, F. M. Ziska, the tract of land in question, and the said deed was recorded in the office of the register of deeds of Canadian county on the 12th day of December, 1901; that the said deed so made as aforesaid was made by the said Frank R. Ziska, without consideration, and with the intent that the said F. M. Ziska should hold said land in trust for the said Frank R. Ziska, and for his use and benefit, and with· the intent and design, to hinder, defraud, and delay the plaintiff of her interest in said land in securing support and maintenance from defendant, and hinder, defraud, and delay plaintiff from collecting any judgment for alimony which might be awarded her thereafter; that said F. M. Ziska paid nothing for said land; that said F. M. Ziska has at all times been a resident of the state of Nebraska, and never took possession of said land or resided upon and cultivated the same nor claimed ownership thereof, and defendant Frank R. Ziska has at all times prior to the filing of this action claimed to be the owner of said land; "that the defendant Frank R. Ziska is insolvent, and has been at all times since the 1st day of December, 1901, and has no property subject to execution out of which plaintiff can make her judgment except the land heretofore described; that said deed from Frank R. Ziska to F. M. Ziska to said land is an obstruction to the process of this court, and hinders and delays plaintiff in the collection of her said judgment rendered in this court on the 21st day of November, 1904." Defendant's petition was followed by a prayer for a judgment cancelling said deed and for costs of suit.

To this the defendant F. M. Ziska filed a demurrer, setting out, among other things, that the petition showed on its face that it did not state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant. This demurrer was overruled, to which defendant reserved an exception. He thereafter filed an answer denying every material allegation in plaintiff's petition, admitting the suit in which plaintiff secured a judgment and attachment, which are the basis of this suit, but averring that

the defendant F. M. Ziska was not a party to said suit, and that no summons was ever served on him, nor was he given any notice of the pendency of the said suit, and that none of his rights were litigated therein; that he was the owner in fee simple of the land above set forth, and has been ever since the 30th day of November, 1901, and that the levy of said attachment on said land was an apparent cloud upon the title. This answer was followed by a prayer asking the court to render judgment in his favor, declaring the title to said premises to be in him, free and clear of any incumbrances, lien, or cloud caused by said suit, judgment, or attachment. Frank R. Ziska made no defense or appearance in this case.

On the trial to the court, a demurrer was sustained to the evidence to which plaintiff excepted, and the case is before us on petition in error and case-made.

*W. M. Wallace,* for plaintiff in error.
*Noffsinger & Hinch,* for defendant in error F. M. Ziska.

DUNN, J. (after stating the facts as above). Under the facts in this case as disclosed by the record and the briefs of the parties, two propositions are raised for the consideration of this court. Plaintiff appeals from a judgment of the district court sustaining a demurrer to the evidence, and holding it insufficient to support the allegations of the petition, and argues at length the elements of fraud which it is contended are disclosed by the conveyance of the land attached. Defendant in error joins issue in his brief on this subject, and, in addition thereto, contends that the petition shows on its face that the cause of action is barred by the statute of limitation by virtue of paragraph 4216, 2 Wilson's Rev. & Ann. St. 1903, which provides:

"Civil actions other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * * * Within two years * * * an action for relief on the ground of fraud

—the cause of action in such cases shall not be deemed to have accrued until the discovery of the fraud."

And, second, that the petition of plaintiff is sufficient to sustain her cause of action, for that there is no allegation that an execution issued on the judgment procured in Canadian county or elsewhere, and a return *nulla bona,* prior to the beginning of this suit to set aside this alleged fraudulent conveyance. We will first discuss the legal propositions in the order here stated.

The deed which it is sought to have annulled was made on November 30, 1901. The suit in this case was begun on the 6th day of January, 1905, and it must be conceded, under the petition filed, that if the construction of the statute invoked by defendant is made applicable to this class and character of actions, then the cause of action is barred, for there is no allegation of a discovery which would take it out of its operation. As appears in the statement of facts, the basis of the claim which plaintiff makes against her husband to defeat the collection of which the deed is charged to have been made is the judgment secured by her in Nebraska in November, 1903. On this judgment, on the 7th of September, 1904, she filed her suit in the district court of Canadian county, and on the 21st of November following secured a judgment sustaining an attachment upon this tract of land, and the suit in this case was instituted in the January following. Defendant, in support of his theory, cites the cases of *Arnett v. Coffey,* 1 Colo. App. 34, 27 Pac. 614; *Fox v. Lipe,* 14 Colo. App. 258, 59 Pac. 850; *Wood v. Carpenter,* 101 U. S. 135, 25 L. Ed. 807. An inspection of the cases from Colorado shows that in neither of them plaintiff had any lien on the property sought to be subjected to the payment of his judgment, and the reasoning of the court virtually places its decision on this ground. The United States case is not in point, as it does not deal with this question. In that case Carpenter, the defendant, fraudulently transferred his property to preclude Wood, the plaintiff, from subjecting it to the payment of certain judgments he held against him. Insisting

that he was entirely without funds, and that his son-in-law would relieve him of these judgments by paying 50 cents on the dollar for them, defendant induced the plaintiff to sell the same at this reduced rate. Thereafter Carpenter secured title to his property holding it in his own name, and Wood brought this suit setting up the misrepresentations and fraud practiced on him which induced him to part title to his judgments at 50 per centum of their face value. The suit was brought to recover damages for this deceit, and was not to set aside a fraudulent conveyance. Hence it does not apply to the case at bar. Our investigation discloses, however, that the authorities are not altogether in harmony upon the question of whether or not the statute of limitaions relating to fraud and its discovery apply in this character of cases, but it is our judgment that the better courts and the better reasoning both hold in reason and principle correctly in denying such application. A debtor about to be subjected to a suit or to the payment of claims of his creditors could very frequently long prior to the time when demand could be made upon him transfer all of his property, bring notice thereof to plaintiff, and after the expiration of the statute of limitations relating to fraud, and the claims of his creditors had matured, plead the statute and it, thereby, instead of being a salutary one for the prevention of fraud would prove its most potent safeguard. We hold that in this class of cases the statute of limitations, which provides that actions for relief on the ground of fraud can only be brought within two years after the cause of action shall accrue or the discovery of the fraud, does not apply in actions to set aside deeds in fraud of judgment creditors where the plaintiff has not been guilty of such laches in securing his judgment as would render it inequitable to entertain his suit; that is, the statute will not be held to begin to run at the time of the conveyance or the discovery thereof, but at the time of securing the judgment, as this is the date of the accrual of plaintiff's cause of action.

The proposition involved is most clearly considered in the

case of *Mickle v. Walraven*, 92 Iowa, 423, 60 N. W. 633. In that case the fraudulent conveyance was made 18 years prior to the time plaintiff secured judgment upon his original claim which was made the basis of his suit to set aside the conveyance, and, though the court held that, owing to the laches of plaintiff, he could not recover, its reasoning upon the question involved in this case is worthy of note, and in our judgment correctly states the law.

"It has frequently been held by this court that the record of a deed is notice to the world of its contents, and that, where a deed which is fraudulent as against creditors is spread upon the public records, notice to the world is given of its character, or at least, sufficient information is conveyed thereby, in the absence of special circumstances, to put creditors upon inquiry as to its contents and character. *Gebhard v. Sattler,* 40 Iowa, 152; *Bishop v. Knowles,* 53 Iowa, 268, 5 N. W. 139; *Gardner v. Cole,* 21 Iowa, 205; *Hawley v. Page,* 77 Iowa, 239, 42 N. W. 193, 14 Am. St. Rep. 275; *Laird v. Kilbourne,* 70 Iowa, 83, 30 N. W. 9; *Francis v. Wallace,* 77 Iowa, 373, 42 N. W. 323. Following these cases, we must hold that plaintiff discovered the fraud in these conveyances at the time they were recorded. At the time of the discovery of the fraud, however, plaintiff's right of action had not accrued. Before he could institute his action to subject the land to the payment of his claim, he must have had a lien upon it either by attachment or judgment. *Clark v. Raymond,* 84 Iowa, 251, 50 N. W. 1068; *Faivre v. Gillman,* 84 Iowa, 573, 51 N. W. 46; *Gwyer v. Figgins,* 37 Iowa, 517; *Gordon v. Worthley,* 48 Iowa, 429; *Pearson v. Maxfield,* 51 Iowa, 76, 50 N. W. 77; *Miller v. Dayton,* 47 Iowa, 312; *Taylor v. Branscombe,* 74 Iowa, 534, 38 N. W. 400. As plaintiff's cause of action did not accrue until he obtained his judgment on September 15, 1891, the statute did not begin to run until that time, although he had knowledge of the fraud which he complains was perpetrated nearly 18 years before; and, as he commenced this suit within a few months after he recovered his judgment, the action, strictly speaking, is not barred. This is the holding in other states under similar statutes. *Gates v. Andrews,* 37 N. Y. 657. 97 Am. Dec. 764; *Compton v. Perry,* 23 Tex. 414; *Eyre v. Beebe,* 28 How. Prac. (N. Y.) 333; *Reynolds v. Lansford,* 16 Tex. 286; Bump, Fraud. Conv. (2d Ed.) p. 547; *Wilson v. Buchanan,* 7 Grat. (Va.) 334, and authorities cited."

In addition to the authorities cited, we call attention to the holding of the courts in the following cases, all of which support the propostion: *Wagner v. Law*, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 15 L. R. A. 784, 28 Am. St. Rep. 56; *Stewart v. Thompson et al.*, 32 Cal. 261; *Brown v. Campbell*, 100 .Cal. 635, 35 Pac. 433, 38 Am. St. Rep. 314; *Ohm v. Superior Court of San Francisco*, 85 Cal. 545, 26 Pac. 244, 20 Am. St. Rep. 245; *Blackwell v. Hatch*, 13 Okla. 169, 73 Pac. 933; *Gales v. Andrews et al.*, 37 N. Y. 657, 97 Am. Dec. 764; *Walkins v. Wilhoit* (Cal.) 35 Pac. 646; *Rounds & James v. Green*, 29 Minn. 139, 12 N. W. 454; *Abbey et al. v. Commercial Bank of New Orleans*, 31 Miss. 434; *Richardson v. Mounce*, 19 S. C. 477.

In the case of *Brown v. Campbell, supra,* the Supreme Court of the state of California says:

"Statutes of limitations in an action to subject property fraudulently conveyed to the payment of plaintiff's judgment does not begin to run at the date of such conveyance, but only on the recovery of the judgment, because until it was obtained plaintiff had no cause of action."

This case was similar to the case at bar, in that plaintiff began his suit against the defendant, who was a nonresident, by attaching real property which had been conveyed to an alleged fraudulent grantee, basing his action upon a foreign judgment and securing service by publication. The contention of the defendant was that the statute of limitations had run on the action, and the court said, in considering the proposition:

"The cause of action stated in the cross-complaint is not barred by either section 343 or subdivision 4 of section 338 of the Code of Civil Procedure. The defendant's cause of action to subject the fund in controversy, or the property from which it was derived, to the payment of the indebtedness due to him from Joseph Brown, did not accrue at the date of the alleged fraudulent conveyance, but only when he obtained a judgment against his debtor upon which an execution would issue in this state. The general rule as to the time when a creditor acquires the right to maintain an action to set aside a fraudulent conveyance made by

his debtor is thus stated at page 522 (2d Ed.) Bump on Fraudulent Conveyances: 'No creditor can be said to be delayed, hindered, or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance. Such specific right does not exist until he has bound the property by judgment, or by judgment and execution, as the case may be, and has shown that he is defrauded by the conveyance in consequence of not being able to procure satisfaction of his debt in a due course of law. Then, and then only, he acquires a specific right to be satisfied out of the property conveyed, and shows that he is a creditor, and is delayed, hindered and defrauded by the conveyance.' In accordance with this rule, it has been held in this state that the statute of limitations does not begin to run against such an action by a creditor until he has obtained such a judgment against his debtor, because until then he has no right of action. *Forde v. Exempt Fire Ins. Co.*, 50 Cal. 302; *Ohm v. Superior Court*, 85 Cal. 545, 26 Pac. 244, 20 Am. St. Rep. 245."

The case of *Blackwell v. Hatch, supra,* was one involving practically the same proposition as is involved in the case at bar. In it appeal was made, as here, to the statute of limitations. The facts were: September 18, 1895, A. J. Blackwell conveyed by warranty deed certain real estate in Kay county to his wife. Thereafter, on the 14th of March, 1898, two years an a half after the conveyance, Hatch began his action in which he secured judgment against A. J. Blackwell. Suit was brought with this judgment as a basis to set aside the deed from Blackwell to his wife, subjecting the land to the payment of Hatch's judgment. Execution was issued and returned *nulla bona.* On the case being appealed to the Supreme Court, its holding was:

"It is true that more than two years elapsed from the conveyance of the land to Rosa Blackwell until the commencement of this action; but in a case like the one now under consideration it does not necessarily follow that the cause of action accrued at the time of the fraudulent conveyance, or even from the discovery of the fraud. It is a common expression that the statute of limitation runs from the discovery of the fraud, and that is the general rule. But, like all general rules, it has its exceptions. For instance,

suppose that A. holds a note against B., which will mature in four years, and B. fraudulently conveys all of his property to a third person, to defraud A. The statute will not run against A. before the maturity of his note, because he would not be entitled to judgment in a court of law before that time; and a creditors' bill cannot be maintained until after judgment is recovered on the debt in a court of law, and an execution returned, 'No property found.' Counsel for appellant assume that the statute begins to run as soon as the fraudulent act is committed. This is not always true, as before stated. At any rate, the commission or even discovery of the fraud does not start the statute to running, unless under conditions then existing a creditor's cause of action accrues. It is true that in many cases the cause of action accrues when the fraud is disovered, or when a party is in law chargeable with notice thereof; but in a case like this one the statute commences to run when an execution is returned *nulla bona*, and not from the date of the fraudulent conveyance. In other words, equity will not reach out and collect a debt until the party has exhausted his remedy in a court of law. It was the duty of Hatch to commence suit on his claim against A. J. Blackwell when due, and to collect the same in the ordinary way, if possible. This he did, and found that the debtor had no property out of which it could be made. He was then entitled to commence this action within two years after the execution was returned, for his cause of action at that moment accrued. In other words, he could not maintain a creditors' bill before the execution was returned, but he could at any time within two years thereafter bring such action. A cause of action is deemed to accrue at the earliest moment when a creditor can commence the particular action."

Hence it must follow that in this case the contention of defendant that the statute of limitations had run, and that the action was barred thereby, cannot be sustained.

The next proposition to which our attention is invited is that the petition is insufficient, because it fails to aver that plaintiff had execution issued on her judgment and returned unsatisfied. In the case last cited, and from which we have quoted, it will be noted that the court in discussing the question of the statute of limitations incidently states that "a creditors" bill cannot be maintained until after judgment is recovered on the debt in a court of law,

and an execution returned, 'No property found.' This expression was simply applying the law to the facts of that case, and a holding that the two-year statute of limitations began to run on the date of the return of this execution which had been taken out and returned without satisfaction, and not of the date of the conveyance or its discovery. *Taylor v. Bowker* 111 U. S. 110, 4 Sup. Ct. 397, 28 L. Ed. 368. The defendant in support of his contention cites the following authorities: *Watkins v. Wilhoit* (Cal.) 35 Pac. 646; *Chandler v. Colcord*, 1 Okla. 260, 32 Pac. 330; *Taylor v. Bowker*, 111 U. S. 110, 4 Sup. Ct. 397, 28 L. Ed. 368; *Adsit v. Butler*, 87 N. Y. 585; *Verner v Downs*, 13 S. C. 449; *Burdsall v. Waggoner*, 4 Colo. 256; *Botcher v. Berry*, 6 Mont. 448, 13 Pac. 45.

The case of *Watkins v. Wilhoit, supra*, was a California case, and an investigation of the facts and of the opinion will show, as do many other cases where the question has been raised, that the exhaustion of plaintiff's legal remedy may be shown by an allegation that the debtor has had execution issued and returned *nulla bona;* but does not hold that this is the only way in which it may be made to appear, for in this case an execution had been issued and returned without satisfaction, and the court holding on this point said: "It is essential to the cause of such an action that the plaintiff should have exhausted his remedy at law, otherwise a court of equity has no jurisdiction of the creditors' bill (3 Pom. Eq. Jur. art. 1415), and the fact that an execution has been returned *nulla bona* is conclusive that the legal remedy has been exhausted"—which, in effect, simply holds that the return *nulla bona* of the execution is sufficient evidence to support an appeal to the equitable side of the court. On this point the Supreme Court of that state said in the case of *Harris v. Taylor et al.*, 15 Cal. 348, the plaintiff must show in order to be entitled to relief at the hands of a court of equity "that he has been deprived of his remedy at law, and is compelled to resort to equity for relief. If the debtor has other property which may be reached

by the ordinary legal remedies the court of equity will not interfere. And it must be affirmatively shown that such remedies have been exhausted, or that a resort to them would be fruitless and unavailing;" in effect, that the averment that there was no other property would show the inadequacy of an execution.

The next case cited is the case of *Chandler v. Colcord, supra.* The syllabus in that case holds:

"To enable a creditor to assail the validity of a chattel mortgage executed by his debtor, he must not only obtain a judgment, but also a valid execution against the property of the debtor."

The force of this language of the syllabus is broken when the facts are considered and the language used by the court in the rendition of the opinion are observed. The limitation upon the scope of the syllabus is shown by the following paragraph:

"The law is well settled that a creditor who has no lien on the property covered by a chattel mortgage cannot be permitted to assail the validity of the mortgage on the ground that it was made with intent to hinder, delay, and defraud the creditors of the mortgagors. In order to do so, he must not only obtain a judgment, but must have a valid execution against the property of the mortgagor."

This case is not applicable to the facts in the case at bar, for the attachment sued out in this case established a lien against this property in favor of the plaintiff.

The case of *Taylor v. Bowker, supra,* from the United States Supreme Court, is not in point on the proposition under discussion. At the outset of the opinion Justice Harlan says:

"The only point seriously insisted upon in argument, or which is necessary to be considered, is that this suit was barred by limitation."

The question in the case was: Did the cause of action accrue at the time of the conveyance or transfer of the property involved, or at the time of the return of the execution, which was issued on the judgment and returned unsatisfied? The case arose in Maine, and the statute of limitations of that state in this character of cases is six years.

"The judgment against the company was entered more than six years before the commencement of this suit. It is insisted that appellee's cause of action accrued upon the entry of the judgment; while it is contended, in behalf of appellee, that even if the foregoing limitation has any application in a suit in equity, brought in the Circuit Court of the United States by a citizen of another state, his cause of action did not accrue until the return of execution against the company, which occurred within six years prior to this suit."

And the court held "that the complainant's cause of action should not be deemed to have accrued until the return of the execution. Consequently his suit was not barred by the limitation of six years."

In neither of the cases *Adsit v. Butler, supra,* and *Verner v. Downs, supra,* does it appear that plaintiff sued out an attachment or in any other manner secured a lien upon the specific property which it was alleged had been fraudulently transferred, and which it was sought to subject to the payment of the judgment. The question of the effect of such a lien was not in either of these cases, nor was it considered or discussed by the court, and, to this extent, they are not authorities in the case at bar.

The case of *Burdsall v. Waggoner* (Colo.) *supra,* simply holds that a party to maintain a bill of this character "is usually required to show not only a judgment obtains, but an execution sued out with a return of *nulla bona,* or that the writ is unsatisfied in whole or in part"; and then states:

"But, even where such return is not necessary, the complainant must, by proper averment, lay sufficient ground for the relief he seeks in a court of equity. The bill should show, not only that the debtor has made a fraudulent disposition of his property, but that such disposition embarrasses him in obtaining satisfaction of his debt or judgment. There must be an averment of want of property sufficient to satisfy such debt other than the property which is alleged to have been fraudulently conveyed; for, if there be other property sufficient, then the resort to equity is unnecessary."

The case of *Botcher v. Berry, supra,* is not applicable. On

its being urged. upon the court that the suit was in the nature of a creditors' bill, it said:

"But there is no creditors' bill in this case. The questions discussed at the bar do not arise. Here the property had been seized. It was in the possession of the sheriff, and the question was: Did it belong to Botcher, the assignee, or to McLean & Co.. the assignors? It was not necessary to wait until the claim of the attaching creditor ripened into a judgment, and the return of an execution unsatisfied, before this question could be decided."

The foregoing are the authorities upon which defendant relies to sustain the proposition that, before plaintiff could sustain her action in this case, it was necessary that she have an execution issued upon her judgment and a return of the same unsatisfied, either in whole or in part.

A number of courts hold, as is seen by some of the authorities above cited, that the execution and its return unsatisfied must be pleaded, or facts showing insolvency of the alleged fraudulent creditor and the total absence of any property out of which debtor or creditor may secure satisfaction of his judgment. Such, also, is the holding of the Supreme Courts in the states of Missouri and Iowa. *Turner & McKnight v. Adams*, 46 Mo. 95; *Gwyer v. Figgins & Figgins*, 37 Iowa, 517. In the Iowa case the court states in the syllabus:

"A court of equity will not interfere to annul a voluntary conveyance claimed to be fraudulent as against judgment creditors, unless the insolvency of the debtor is shown by return of *nulla bona* or other satisfactory proof."

In the Missouri case the court says:

"The judgment creditor must first exhaust his legal remedies, and this is usually done by obtaining judgment and execution, with return of *nulla bona*. But, where it is shown that the judgment debtor is insolvent, and that the issue of an execution would be of no practical utility, its issue may be dispensed with, and the attaching creditor may resort directly to chancery for his remedy against such judgment creditor without such prior proceedings."

This is also the rule adopted in the United States Supreme Court as declared in the case of *Case v. Beauregard*, 101 U. S. 688, 25 L. Ed. 1004:

"The rule is a familiar one that a court of equity will not entertain a case for relief where the complainant has an adequte legal remedy. The complaining party must therefore show that he had done all that he could do at law to obtain his rights. But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear. Accordingly the rule, though general, is not without many exceptions. Neither law nor equity requires a meaningless form, *'Bona, sed impossibilia non cogit lex.'* It has been decided that where it appears by the bill that the debtor is insolvent, and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference. *Turner v. Adams*, 46 Mo. 95; *Postlewait & Creagan and Keeler v. Howes*, 3 Iowa, 365; *Ticonic Bank v. Harvey*, 16 Iowa, 141; *Botsford v. Beers,* 11 Conn. 369; *Payne v. Sheldon,* 63 Barb. (N. Y.) 169. This is certainly true where the creditor has a lien or a trust in his favor."

And the court in the syllabus says:

"Whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting his remedy at law."

Here, again, we notice that the necessity for the issuance of an execution and its return without satisfaction is limited to those cases where there is no trust and no lien upon the specific property in favor of plaintiff. The attachment which plaintiff had levied upon the land here in controversy, and which was sustained as to the defendant, F. R. Ziska, in her suit against him, was a lien upon this land, and reached all of the right, title or interest of any kind in and to the same held and owned by him. If the conveyance made was not fraudulent, but in good faith, or if debtor had sufficient other property subject to execution on this judgment, then plaintiff took nothing by this attachment; while, on the other

hand, if the conveyance was fraudulent and there was lacking other property, it was void as to her, and she was entitled to have the land sold and all of the rights of the adverse holder foreclosed, and the avails of the same subjected to the payment of her claim. *Kimbro v. Clark*, 17 Neb. 403, 22 N. W. 788; *Arper v. Baze*, 9 Minn. 108 (Gil. 98); *Westervelt v. Hagge*, 61 Neb. 647, 85 N. W. 852, 54 L. R. A. 333; *McKinley v. Bank*, 104 Ill. 180; *Loving v. Pairo*, 10 Iowa, 282, 77 Am. Dec. 108; *Taylor v. Stone & Lime Co.*, 38 Kan. 547; 16 Pac. 751.

The Supreme Court of the state of Nebraska in the case of *Kimbro v. Clark, supra,* held in the syllabus as follows:

"Where an attachment is levied upon real estate belonging to a nonresident debtor, or which it is claimed is owned by him, whether held in his own name or not, the attaching creditor acquires a lien upon the interest of the debtor, if any, in the land, which he may enforce after jugdment by an action in the nature of a creditors' bill. Such an action may be maintained, even though the original judgment was obtained without other service than by publication in a newspaper."

In the case of *Arper v. Baze, supra*, the court said:

"A creditor may levy an attachment upon real estate of his debtor previously transferred with intent to defraud creditors, and thereby acquire a lien on the property."

In the case of *McKinney, Gilmore & Co. v. Bank, supra*, the court says in the syllabus:

"Creditors have the right to treat conveyances of their debtors made to hinder, delay, or defraud them as void, and their election to treat them as void is shown by attaching the property so conveyed, and such attachments, when levied, will become a lien upon the property with the same effect as if no fraudulent conveyance had been made."

The question now presented to us, since, as we have seen, the existence of an attachment upon this land created a lien in favor of plaintiff, is what is the law in reference to the issuance of an execution and its return unsatisfied? Is this necessary? We conclude from an examination of the authorities that it is not. *Level*

*Land Company v. Sivyer*, 112 Wis. 442, 88 N. W. 317; *Scanlan v. Murphy*, 51 Minn. 536, 53 N. W. 799; *Francis v. Lawrence*, 48 N. J. Eq. 508, 22 Atl. 259; *Dawson v. Sims*, 14 Or. 561, 13 Pac. 506.

In the case of *Level Land Company v. Sivyer,. supra,* the court says:

"One having a specific lien, by judgment or otherwise, may maintain suit to remove fraudulent or invalid obstacles standing in the way of its enforcement without showing issue of an execution and return thereof unsatisfied."

In the case of *Francis v. Lawrence, supra,* the court speaks as follows:

"A creditor who obtains a lien by levy of attachment on lands can maintain a creditor's bill to set aside a fraudulent conveyance thereof."

In the case of *Dawson v. Sims, supra,* the Supreme Court of Oregon holds that:

"The lien created by an attachment duly levied upon the property of the debtor is a sufficient. foundation for the jurisdiction of a court of equity to aid, by means of a creditors' suit, in removing fraudulent impediments or conveyances which prevent the creditor from laying hold of the property and applying it to the payment of his debt."

In Minnesota, in the case of *Scanlan v. Murphy, supra,* the court, giving the fraudulent conveyance act its full force and holding the transfer as to the judgment creditor absolutely void and the judgment rendered subsequent to the transfer a lien on the land, holds that:

"It is only necessary that the plaintiff shall have a lien by judgment on the real estate subsequent to the fraudulent conveyance. * * * It is not necessary, therefore, for the creditor to follow his legal remedy further than to recover and docket his judgment."

It will be observed that these authorities all sustain the proposition that, where there is a lien, then it is not necessary to pursue the action in a court of law further than the establishment of such lien. There are very many other respectable authorities

holding that, where the bill or petition alleges that the debtor is insolvent and that the issuance of execution would be of no practical utility, he need not pursue his legal remedy further than to recover and docket his judgment, and this especially where a lien is thereby established.

There is no question but that under the ancient practice as it obtained in England, and later in the United States, and still in some courts of this country, where the courts of law and equity are separate tribunals, and where the rule was observed that equity granted relief in those cases only where the law by reason of its universality was not adequate, it was a practice to require the judgment creditor to have an execution issued and a return thereon *nulla bona* before equity would reach out its strong arm and render any assistance, and that this was the only proof that such courts would receive to show that the creditor was without remedy or had exhausted the same at law. But, under our modern practice, a great many of the old forms and proceedings are no longer observed, and in our courts to-day, where law and equity are both administered in one form of action, and by the same courts, the reason for the rule is passed and gone, and, when the reason is gone, the rule should and does go with it. Such is the law, in our judgment, in this jurisdiction, and such do we believe to be its declaration by the best authorties. 20 Cyc. p. 726; *Ryan v. Spieth,* 18 Mont. 45, 44 Pac. 403; *Bomberger v. Turner,* 13 Ohio St. 263, 82 Am. Dec. 438; *Lee v. Orr,* 70 Cal. 398, 11 Pac. 745; *Merry & Glenny v. Fremon et al.,* 44 Mo. 518; *Fleischner v. Bank,* 36 Or. 553, 54 Pac. 884, 60 Pac. 603, 61 Pac. 345.

The text in 20 Cyc., *supra,* is as follows:

"It has been held that the creditor must aver, not only that he has reduced his claim to judgment, but that he has had a return of an execution thereon unsatisfied in whole or in part, and that the place of such averment cannot be supplied by an allegation of a total want of property. This is put upon the ground that courts of equity are not tribunals for the collection of debts, although resort may be had to them after all legal means have been

exhausted. But, after all, the fruitless execution, although generally conclusive, is only evidence that the creditor has no adequate remedy at law, or that he has exhausted his legal remedy. It is not, however, the only possible means of proof. Ordinarily neither law nor equity requires a meaningless form. Accordingly it has been decided in many cases that a judgment creditor whose judgment would have been a lien on the property but for the fraudulent conveyance may proceed at once to have the conveyance set aside. If he alleges and proves that the debtor is insolvent and that the issuing of an execution would be of no practical utility, he need not show that he has pursued his legal remedy further than to recover and docket his judgment."

The Supreme Court of the state of Oregon in *Fleischner v. Bank, supra,* holds.

"The issuance and return of an execution is not a necessary preliminary to the right to maintain a creditor's suit to set aside conveyances by the debtor and to uncover assets, where the debtor is alleged to be insolvent."

The case of *Merry v. Fremon, supra,* was one wherein it was sought to set aside certain conveyances because of their fraudulent character. The court says:

"It is generally necessary to show the issuance of an execution and a return of *nulla bona,* but it may be dispensed with where it is shown that the debtor was insolvent."

The Supreme Court of the state of Montana in the case of *Ryan v. Spieth, supra,* involving the rule as to personal property and in which it was sought to set aside certain transfers on the ground that they were fraudulent, held:

"A complaint in equity to reach and have applied to a judgment, property of the judgment debtor, alleged to be fraudulently concealed, which shows that there is no property subject to execution and what has become of it, need not, also allege as a prerequisite to equitable relief that an execution was issued and returned unsatisfied."

Under these authorities, and under the facts in this case, the judgment creditor having secured a lien upon the property, and averring in her petition that "the defendant Frank R. Ziska is insolvent and has been at all times since the 1st day of Decem-

ber, 1901, and has no property subject to execution out of which paintiff can make her judgment except the land heretofore described," we hold that it was unnecessary for her to allege and prove the issuance of execution and its return *nulla bona,* and that, cause of action not being barred, the petition states a cause of action.

This conclusion brings us to a consideration of the evidence introduced in the case by plaintiff to sustain her petition. The only evidence offered aside from documentary proof is found in the testimony of plaintiff and her former husband, the alleged fraudulent grantor. This has been carefully read by the entire court, and the majority thereof finds that, while there is no direct proof upon some material allegations of the petition, it cannot be said from a consideration of the entire testimony and the relationship to each other of all the parties to the suit that there is no evidence either direct or circumstantial which does not tend in some degree to support the allegations. The rule in this state on the question presented is very clearly announced in the syllabus in the case of *Edmission v. Drumm-Flato Commission Company,* 13 Okla. 440, 73 Pac. 958, where it is held:

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence. On a demurrer to the evidence, the court cannot weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrant."

With this for a measure by which to consider the evidence offered it is our judgment that the trial court erred in sustaining the demurrer thereto, and the case is accordingly reversed. The writer hereof is unable to yield his assent to the conclusion reached by a majority of the court on the sufficiency of the evidence to sustain the petition, and dissents from this portion of the opinion, concurring with the other Justices as to the balance.

Williams, C. J., and Hayes, Kane, and Turner, JJ., concur; Dunn, J. dissents in part.